KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
IAN KANIG - # 295623
ikanig@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
TWILIO INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHON PERRY-HUDSON, individually and on behalf of all others similarly situated,, <br><br> Plaintiff, <br><br> v. <br><br> TWILIO INC., <br><br> Defendant. | Case No. 3:24-cv-03741-VC <br><br> **DEFENDANT TWILIO INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> **Pursuant to Fed. R. Civ. P. 12(b)(6).** <br><br> Date:          November 21, 2024 <br> Time:          10:00 a.m. <br> Courtroom:   4 — 17th Floor <br> Judge:         Hon. Vince Chhabria <br><br> Date Filed:  June 21, 2024 <br> Trial Date:  Not Yet Set |

2737453

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ...................................................................................................2

II.  BACKGROUND ...................................................................................................4

    A.  Plaintiff alleges that he purchased a men's hair loss treatment on the Keeps website in May 2024, at which time he was presented with its Privacy Policy. ........4

    B.  Plaintiff alleges that he then saw internet ads for hair loss treatments, and he insinuates it was because Keeps disclosed his personal information to Twilio.........5

    C.  Plaintiff misdescribes materials incorporated into his complaint to wrongly speculate that Twilio shared his customer information with its other clients............6

III. ARGUMENT ...........................................................................................................7

    A.  Plaintiff's action fails because Keeps disclosed it may share his information with third-party vendors like Twilio for marketing and advertising purposes. ..........7

    B.  Plaintiff's action fails because Twilio instructed Keeps to disclose its data practices and thus lacked the requisite intent to invade Plaintiff's privacy................8

    C.  Plaintiff's CIPA claims suffer from additional, incurable statutory defects............10

        1.  Twilio is exempt from Section 631 under the "party exception" rule. ............10

        2.  Plaintiff cannot state a wiretapping claim under Section 631 because that claim applies only to telephonic communications, not the internet.........12

        3.  Plaintiff cannot state an interception claim under Section 631 because Twilio did not allegedly "intercept" his communications "in transit."............12

        4.  Plaintiff cannot assert a Section 632 claim because software is not a "recording device" and his communications were nonconfidential. ..............13

    D.  Plaintiff's constitutional and common law claims fail as a matter of law. ...............14

IV.  CONCLUSION......................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brown v. Google LLC*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) ...............................................................8

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) .................................................................14

*Cline v. Reetz-Laiolo*,
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) .............................................................13

*Doe I v. Google LLC*,
  — F. Supp. 3d ——, 2024 WL 3490744 (N.D. Cal. Jul. 22, 2024) ................. *passim*

*Doe v. Kaiser Found. Health Plan, Inc.*,
  No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .........10, 11

*Doe v. Microsoft Corp.*,
  No. C23-0718-JCC, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ............3, 13

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ........................................................................10, 12

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ...........................................................3, 8, 10

*In re Google Location Hist. Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019) ...............................................................13

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ......................................................... *passim*

*Hammerling v. Google LLC*,
  No. 21-CV-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ...........3, 12

*Hammerling v. Google, LLC*,
  No. 22–17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ..............................3, 8, 14

*In Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
  No. 17-cv-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ..................13

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................9

*James v. Allstate Ins. Co.*,
  No. 3:23-CV-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)...........2, 4, 12, 14

2737453

*Javier v. Assurance IQ, LLC*,
    649 F. Supp. 3d 891 (N.D. Cal. 2023) ...................................................................................11

*Johnson v. Blue Nile, Inc.*,
    No. 20-CV-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021)....................................10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..............................................................................................9

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ...............................................................................................12

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...........................................................................4, 15

*Revitch v. New Moosejaw, Inc.*,
    No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ...................................13

*Rodriguez v. Ford Motor Co.*,
    No. 3:23-cv-000598-RBM, 2024 WL 1223485 (S.D. Cal. Mar. 21, 2024)............................11

*Rodriguez v. Google LLC*,
    No. 20-cv-4688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)................................................12

*Rodriguez v. Google LLC*,
    No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021)..............................................9

*Swarts v. Home Depot, Inc.*,
    689 F. Supp. 3d 732 (N.D. Cal. 2023) ............................................................................3, 4, 12

*Thomasson v. GC Servs. Ltd. P'ship*,
    321 Fed. App'x. 557 (9th Cir. 2008) ....................................................................................8

*Williams v. DDRMedia, LLC*,
    2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ................................................................10, 14

*Williams v. What If Holdings, LLC*,
    No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................2, 10, 12

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ...............................................................................4, 14

*Yale v. Clicktale, Inc.*,
    No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ....................................10

**State Cases**

*Flanagan v. Flanagan*,
    27 Cal. 4th 766 (2002) ......................................................................................................8, 13

2737453

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Hernandez v. Hillsides, Inc.,*
   47 Cal. 4th 272 (2009) .................................................................................................8, 14

*Hill v. NCAA,*
   7 Cal. 4th 1 (1994) .......................................................................................................9, 14

*Loder v. City of Glendale*,
   14 Cal. 4th 846 (1997) .......................................................................................................14

*People v. Lyon,*
   61 Cal. App. 5th 237 (2021) ...............................................................................................13

*People v. Ratekin,*
   212 Cal. App. 3d 1165 (1989) .............................................................................................13

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) ................................................................................................10

**State Statutes**

Cal. Pen. Code § 631............................................................................................... *passim*

Cal. Pen. Code §§ 632............................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 9......................................................................................................................9

Fed. R. Civ. P. 12....................................................................................................................1

**Regulations**

45 C.F.R. § 164.502(e)(1)(i) ...................................................................................................10

45 C.F.R. § 164.504(e)(2)(i)(B)...............................................................................................10

**Constitutional Provisions**

California Constitution Article I, § 1 .......................................................................................1

**Other Authorities**

*Device*, Black's Law Dictionary (12th ed. 2024) ...................................................................13

*Device*, Merriam-Webster Dictionary Online (2024) ................................................................13

2737453

1

## **TWILIO'S NOTICE OF MOTION AND MOTION TO DISMISS**

2

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

3

**PLEASE TAKE NOTICE THAT** on November 21, 2024 at 10:00 a.m., or as soon

4

thereafter as counsel may be heard, before the Honorable Vince Chhabria in Courtroom 4, on the

5

17th Floor of the Phillip Burton Federal Building and U.S. Courthouse, 450 Golden Gate Avenue,

6

San Francisco, California, 94102, Defendant Twilio Inc. ("Twilio") will and hereby does move to

7

dismiss the complaint filed by Plaintiff Jonathon Perry-Hudson in its entirety and with prejudice

8

for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

9

The specific issues raised through Twilio's motion to dismiss are as follows:

10    1.    Whether Plaintiff's entire action fails because it was disclosed that his personal

11          information may be shared with third-party software vendors like Twilio;

12    2.    Whether Plaintiff's entire action fails because, regardless of anything else, Twilio

13          lacked the requisite intent to willfully or intentionally invade his privacy;

14    3.    Whether Plaintiff has failed to state a claim under California Penal Code § 631;

15    4.    Whether Plaintiff has failed to state a claim under California Penal Code § 632;

16    5.    Whether Plaintiff has failed to state a claim for invasion of privacy under Article I,

17          Section 1 of the California Constitution and California common law.

18

This motion is based on this notice of motion and motion, the following memorandum of

19

points and authorities, Twilio's request for judicial notice and the supporting declaration of Ian

20

Kanig with the exhibits attached thereto, and on all pleadings and papers on file or to be filed in

21

this action, on the arguments of counsel, and on any other matters properly before the Court.

22

Dated:  August 19, 2024                                  KEKER, VAN NEST & PETERS LLP

23

24                                          By:    /s/ Ian Kanig
                                                   BENJAMIN BERKOWITZ
25                                                 CHRISTINA LEE
                                                   IAN KANIG
26
                                                   Attorneys for Defendant
27                                                 TWILIO INC.

28

[1] The parties have stipulated to and proposed a lengthened schedule for briefing Twilio's motion to dismiss and Twilio's motion to compel individual arbitration, all filed concurrently herewith.

2737453

1    **I.      INTRODUCTION**

2          This action seeks to ride the recent wave of internet-tracking litigation.  But, instead, it

3    mistargets a third-party software vendor for alleged privacy violations that simply did not occur.

4          Plaintiff Jonathon Perry-Hudson alleges that Keeps, a company that offers men's hair loss

5    treatments online, installed Defendant Twilio Inc.'s customer engagement software on the Keeps

6    website.  Dkt. No. 1 ("Compl.") ¶¶ 27–37.[2]  He says that Keeps used Twilio's software to collect

7    information about its customers' purchases, build customer profiles about them, and then deliver

8    internet ads related to hair loss treatments through its advertising partners.  *Id.* ¶¶ 38–51.  In doing

9    so, Plaintiff claims that Keeps sent his personal information to Twilio, but never disclosed that

10   third-party vendors like Twilio might receive that information and then use it for marketing and

11   advertising purposes.  *Id.* ¶¶ 5–7, 76, 86, 92.  On that basis, he has filed this class action against

12   ***Twilio*** for wiretapping and eavesdropping under the California Invasion of Privacy Act ("CIPA")

13   and invasion of privacy under the California Constitution and common law.  *Id.* ¶¶ 68–94.[3]

14         Like many other CIPA and invasion-of-privacy class actions brought against third-party

15   vendors for providing internet software to a website operator for a lawful purpose, Plaintiff's

16   action against Twilio should be dismissed for failing to state a claim.  *See, e.g.*, *Doe I v. Google*

17   *LLC*, — F. Supp. 3d —–, 2024 WL 3490744, at *1 (N.D. Cal. Jul. 22, 2024); *James v. Allstate*

18   *Ins. Co.*, No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023); *Williams*

19   *v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22,

20   2022); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021).  Beyond the pleading

21   defects that undermine each of his claims, Plaintiff's action fails for two global reasons.

22         **Disclosure.**  Keeps informs its customers that it "may [] share your Personal Information

23   with entities that assist us with marketing and advertising," and that "ad networks to which we

24   belong may use your browsing activity . . . to show you interest-based advertisements."  Kanig

25   _____

26   [2] Keeps is a DBA of non-party Thirty Madison, Inc., which operates several telehealth brands.
     To maintain consistency with Plaintiff's complaint, Twilio refers to Thirty Madison as Keeps.

27   [3] The apparent reason that Plaintiff has sued Twilio, and not Keeps, is that he agreed to arbitrate
     this dispute with Keeps on an individual basis under New York law.  Twilio has concurrently
28   moved to compel arbitration under that agreement under the doctrine of equitable estoppel.  This
     motion is brought in the alternative to that arbitration motion to avoid any claim of waiver.

2737453

1  Declaration ISO Twilio's RJN ("Kanig Decl."), Ex. A ("Keeps Privacy Policy") ¶ 8.  This broad

2  and unambiguous disclosure is fatal to Plaintiff's claims.  *See Hammerling v. Google, LLC*, No.

3  22–17024, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (the disclosure of a challenged data

4  practice defeats California invasion-of-privacy claims as a matter of law); *In re Google Assistant*

5  *Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (CIPA claims also require no disclosure).

6       **No intent.**  Plaintiff also has not pleaded—and cannot plead—that Twilio willfully or

7  intentionally invaded his privacy, which is a required element of each of his claims.  *See Doe I*,

8  2024 WL 3490744, at *6–7 (dismissing CIPA and invasion of privacy claims on this basis).  To

9  the contrary, Twilio's contract with Keeps strictly required Keeps to provide all necessary

10  disclosures and secure customer consent before using Twilio's software.  Kanig Decl., Ex. F ¶ 5.2

11  & Ex. G ¶¶ 6.3–6.4.  There are no well-pleaded allegations that Twilio intended otherwise.

12       **CIPA.**  Beyond these global flaws, Plaintiff's CIPA claims suffer from statutory defects.

13  ***First,*** Twilio is exempt from Section 631 under the "party exception" rule.  Section 631 does not

14  apply to vendors like Twilio that merely provided a tool for a party to collect and analyze its own

15  data.  *See, e.g.*, *Graham*, 533 F. Supp. 3d at 832–33.  Although the party exception may not apply

16  where a software vendor uses customer information it receives for its own commercial purposes,

17  Plaintiff offers only speculation—and no well-pleaded facts—in theorizing that this happened.

18  *See* Compl. ¶ 55.  "The documents incorporated by reference into the complaint," like Twilio's

19  contract with Keeps and its own product descriptions, "do not support this assumption; indeed,

20  they appear to contradict it."  *See Doe I*, 2024 WL 3490744, at *2; *see also* Kanig Decl., Ex. A ¶

21  4 & Ex. F ¶ 4.4 (prohibiting Twilio from using health data for any non-Keeps purpose); Compl. ¶

22  31 (explaining that Twilio's software allows its customers to build their own profiles).

23       ***Second,*** Plaintiff's wiretapping claim fails because courts "uniformly" agree that claim

24  does not apply to the internet.  *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D.

25  Cal. 2023).  ***Third,*** Plaintiff's interception claim—to the extent he is alleging one—fails because

26  he has not alleged that Twilio "intercepted" his data "in transit."  *See Hammerling*, 2022 WL

27  17365255, at *10.  And ***fourth,*** Plaintiff cannot assert a Section 632 claim because that statute

28  applies only to "device[s]," not software, *Doe v. Microsoft Corp.*, No. C23-0718-JCC, 2023 WL

2737453

8780879, at *8 (W.D. Wash. Dec. 19, 2023), and his communications with Keeps were "nonconfidential," *see Swarts*, 689 F. Supp. 3d at 747 (internal quotation marks omitted).

**Invasion-of-privacy.**  Finally, Plaintiff's invasion-of-privacy claims fail because Plaintiff cannot satisfy the "high bar" for pleading such claims.  *See, e.g., In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014).  Twilio is an authorized software vendor whose customer installed its software on its own website and then disclosed its data practices to its end users.  In view of these disclosures, and Twilio's explicit instructions to Keeps to not share unauthorized information, it is impossible to conclude that Twilio has engaged in "highly offensive conduct." *See, e.g.*, *James*, 2023 WL 8879246, at *6 (dismissing invasion-of-privacy claims on this basis). Indeed, there is no well-pleaded allegation that Twilio received anything more than anonymous data.  Compl. ¶ 45, Fig. 3 (alleging that Keeps collected data using a "***segment_anonymous_id***") (emphasis added); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing invasion-of-privacy claims because customer data was anonymized; collecting cases).

Twilio respectfully requests that the Court dismiss this action with prejudice.

## II.     BACKGROUND

### A.     Plaintiff alleges that he purchased a men's hair loss treatment on the Keeps website in May 2024, at which time he was presented with its Privacy Policy.

Plaintiff alleges that he visited the Keeps website in May 2024 and purchased a men's hair loss treatment.  Compl. ¶¶ 5, 7.  To make a purchase on the Keeps website, Plaintiff alleges that all customers are prompted to create a Keeps account.  *See id.* ¶ 49.  In creating a Keeps account, Keeps presented Plaintiff with the Keeps Privacy Policy.  Kanig Decl., Ex. A (the then-operative Keeps Privacy Policy) & Ex. B (current Keeps Privacy Policy); *see also* Twilio's RJN.  In its Privacy Policy, Keeps repeatedly disclosed to Plaintiff—as it discloses to all its customers—that it collects, aggregates, and shares their personal information for marketing and advertising.

First, in the section of the Privacy Policy entitled "**COLLECTION OF PERSONAL INFORMATION,**" Keeps told its customers that it may collect information about them from numerous sources, including from them (*e.g.,* during account creation and purchase), internet advertising companies like Meta and Google (*i.e.,* from other internet activity), and their

browsing activity on the Keeps website (*i.e.,* automatically through the use of browser cookies). Kanig Decl. ¶ 2 & Ex. A ¶ 2. The information that Keeps collects from these sources includes their: (1) contact information; (2) account information; (3) financial information; (4) "personal characteristics," including "general medical history" and "other information relevant to diagnosis and treatment"; (5) "personal preferences, including product preferences, online preferences, and interests"; (6) "online behavior information including details of your visits to the Keeps website, online activity, time spent viewing features, traffic data, location data, logs, language, date and time of access, frequency, and other communication data"; and (7) device information. *Id.* ¶ 3.

Next, in the section entitled "**DISCLOSURE OF PERSONAL INFORMATION**," Keeps broadly disclosed that it may share this "personal information" with "third party vendors and service providers that perform services and functions on our behalf . . . in order to provide these services to us[.]" *Id.* ¶ 4. In the "**ADVERTISEMENT**" section, Keeps stated that it "may [] share your Personal Information with entities that assist us with marketing and advertising." *Id.* ¶ 8. And Keeps also said that "ad networks to which we belong may use your browsing activity across participating websites to show you interest-based advertisements on those websites." *Id.*

These disclosures are required by Keeps's contract with Twilio. RJN at 5 (citing Compl. ¶ 3). Specifically, "[Keeps] represents and warrants [to Twilio] that if it records or monitors . . . communications using the Services, then Customer will comply with all applicable laws prior to doing so, and that Customer will provide all required notices and secure all required prior consents to record or monitor communications using the Services." Kanig Decl., Ex. F ¶ 5.2(a).

**B.** **Plaintiff alleges that he then saw internet ads for hair loss treatments, and he insinuates it was because Keeps disclosed his personal information to Twilio.**

Sometime after Plaintiff made his purchase on the Keeps website, he alleges that he began to see internet ads for men's hair loss treatments on Facebook and other websites. Compl. ¶ 7. He insinuates that he saw those ads because Keeps installed Twilio's customer engagement software (called Segment) on the Keeps website to collect information about its customers, build profiles about them, and deliver internet ads about its products to them through its advertising partners. *Id.* ¶¶ 27–37. By creating customer profiles (called Personas) based on interactions

2737453

with the Keeps website (through Segment's Engage feature), he alleges that Keeps used Segment to target its marketing and advertising on specific, aggregated segments of customers (called Audiences).  *Id.* ¶¶ 34–35.  For example, Keeps may use Segment to create a list of all customers with inactive accounts and send them ads to get them to engage with their website again.  *Id.* ¶ 36.

Plaintiff alleges that Keeps, as part of these "marketing, advertising, and analytics efforts," sent Twilio his personally-identifying health information ("PHI").  *Id.* ¶ 29.  Specifically, he alleges that Keeps installed Twilio's Segment software on the "intake questionnaire" on the Keeps website.  *Id.* ¶¶ 38–50.  Because the word "Segment" appears once in the source code on the first page of this questionnaire, and because he later received internet ads relating to hair loss treatments, Plaintiff assumes that Keeps sent his responses to Twilio in a way that allowed Twilio to identify him as the respondent.  *Id.* ¶¶ 5–7, 45 & Fig. 3.  But the only reference to Segment in this source code is to the creation of a "***segment_anonymous_id***."  *Id.* (emphasis added).

Plaintiff suggests that Segment's "Identity Resolution" feature may have allowed Twilio to later identify him.  *See id.* ¶ 32.  He alleges that: "With Identity Resolution, Twilio associates a users' [sic] AAID with a corresponding Persona Profile on Twilio's platform.  Because Twilio assembles information from other sources into the Persona Profile, AAID alone allows Twilio to identify a particular person."  *Id.*  But Plaintiff does not explain what "AAID" means.[4]  Plaintiff also alleges that Keeps installed Twilio's software on its checkout page (where a customer completes their purchase by providing their financial information), and that Twilio could have used this page to identify customers.  *Id.* ¶ 40.  But Plaintiff does not actually allege that Keeps disclosed his financial information to Twilio (as opposed to anonymized information about, for example, whether he completed his purchase) or, in any case, that Twilio actually identified him.

**C.**   **Plaintiff misdescribes materials incorporated into his complaint to wrongly speculate that Twilio shared his customer information with its other clients.**

Plaintiff then speculates that Twilio, after receiving customer information from its clients,

---

[4] "AAID" may refer to a device identifier for Google Android smartphone users.  But Plaintiff does not allege that he used a Google Android smartphone, so this allegation cannot substantiate his claim that Twilio learned his identity and associated it with his quiz responses.  It is possible that Plaintiff has simply cut-and-pasted this allegation from another complaint (perhaps one against Google), as it appears otherwise unrelated to Twilio's product or the alleged conduct.

"uses such information for its own purposes[.]"  *Id.* ¶ 55.  More specifically, Plaintiff alleges that Twilio "aggregates" the information that it receives from each client "to create the hyper-specific consumer profiles described above" and then "us[es] that information for targeted advertising and building profiles of consumers to use in future advertising for new customers."  *Id.*  But this allegation is devoid of any well-pleaded facts that would make it anything more than conclusory.

To the contrary, the materials that Plaintiff incorporates by reference do ***not*** say that Twilio combines information (let alone PHI) it collects from one client for use with its other clients, or that it otherwise uses that information for its own purposes.  Rather, Twilio's contract with Keeps limits Twilio's use of PHI to what is "necessary to (a) provide the Services . . . and (b) respond to any technical problems or Customer queries[.]"  Kanig Decl., Ex. F ¶ 4.4; *see also id.*, Ex. A ¶ 4 (Keeps "implement[s] contractual protections to limit [third-party] use of [personal] information to help us provide our Service and support our interactions with you.").  The other materials (mostly generic product descriptions written by Twilio) say that Twilio's Engage and Identity Resolution features, when enabled, allows ***individual clients*** to "create[] unified customer profiles" by "merg[ing] the complete history of each customer into a single profile, no matter where they interact with ***your*** business," not with ***others'*** businesses.  Compl. ¶ 31.

What's more, Plaintiff is incorrectly "assuming that [these consumer profiling] features of [Twilio's] products are being enabled on [the Keeps website], based simply on the fact that those features happen to be described in [Twilio's] generic product descriptions."  *See Doe I* 2024 WL 3490744, at *3.  He does not support that assumption with any well-pleaded allegations.

## III.   ARGUMENT

### A.   Plaintiff's action fails because Keeps disclosed it may share his information with third-party vendors like Twilio for marketing and advertising purposes.

Each of Plaintiff's claims require him to prove that Keeps did not disclose that it may share the information it collected about him with third-party vendors and service providers like Twilio.  ***First***, to succeed on a CIPA claim for intentional wiretapping, a plaintiff must prove that the defendant has made an "***unauthorized*** connection" with a "telegraph or telephone wire" or has attempted to read or learn the contents of a communication "***without the consent*** of all

1   parties." Cal. Pen. Code § 631(a) (emphases added); *Google Assistant*, 457 F. Supp. 3d at 828.

2        ***Second***, to succeed on a CIPA claim for eavesdropping, a plaintiff must similarly prove

3   that the defendant has, "***without the consent*** of all parties to a confidential communication," used

4   an "electronic amplifying or recording device" to "***eavesdrop***" on the communication.  Cal. Pen.

5   Code § 632 (emphasis added).  This claim thus requires proof that the eavesdropping was done

6   without the plaintiff's knowledge.  *See Thomasson v. GC Servs. Ltd. P'ship*, 321 Fed. App'x.

7   557, 559 (9th Cir. 2008) ("California courts interpret 'eavesdrop,' as used in § 632, to refer to a

8   third party secretly listening to a conversation between two other parties"); *Brown v. Google LLC*,

9   525 F. Supp. 3d 1049, 1073 (N.D. Cal. 2021) ("A communication is confidential under Section

10  632 if a party 'has an objectively reasonable expectation that the conversation is not being

11  overheard or recorded.'") (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002)).

12       And ***third***, to succeed on an invasion of privacy claim under the California Constitution or

13  common law, a plaintiff must prove that (1) he had a reasonable expectation of privacy and (2)

14  the defendant intruded on that privacy in a highly offensive manner.  *Hernandez v. Hillsides*, Inc.,

15  47 Cal. 4th 272, 286 (2009).  Critically, both elements of these claims are defeated where the

16  alleged intrusion was disclosed to the plaintiff.  *Hammerling*, 2024 WL 937247, at *3.

17       An overriding obstacle to Plaintiff's claims is that Keeps disclosed in its Privacy Policy

18  that it "may [] share your Personal Information with entities that assist us with marketing and

19  advertising."  Kanig Decl., Ex. A ¶ 8; *see also id.* ¶ 4 (additional term regarding the disclosure of

20  personal information).  Keeps defines "Personal Information" to include "contact information,"

21  "personal characteristics," "general medical history," "information relevant to diagnosis and

22  treatment," and "details of your visits to [the Keeps website]."  *Id.* ¶ 3.  Because this broad and

23  unambiguous disclosure plainly covers the practices at issue, this action should be dismissed with

24  prejudice.  *See Hammerling*, 2024 WL 937247, at *3; *Google Assistant*, 457 F. Supp. 3d at 828.

25       **B.      Plaintiff's action fails because Twilio instructed Keeps to disclose its data
              practices and thus lacked the requisite intent to invade Plaintiff's privacy.**

26

27       Plaintiff's claims also require him to establish that Twilio willfully or intentionally

28  obtained his data without authorization and used it for an improper purpose.  *See Doe I*, 2024 WL

8

2737453

1   3490744, at *6 ("CIPA liability only extends to willful or intentional conduct."); *id.* at *7 (intent

2   "is also a necessary element of an invasion of privacy claim") (citing *In re iPhone Application*

3   *Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012)).  In the context of third-party software cases

4   like this one, even actual "awareness that [unauthorized] information is likely being transmitted"

5   does not satisfy those strict standards and "is not the right way to think about intent."  *Id.* at *3.

6   CIPA is a criminal statute, *see* Cal. Pen. Code §§ 631–32, and invasion-of-privacy claims lie only

7   for egregious misconduct that shocks the conscience, *Hill v. NCAA*, 7 Cal. 4th 1, 35–37 (1994).

8          Plaintiff has not pleaded, and cannot plead, that Twilio willfully or intentionally invaded

9   his privacy.  To the contrary, as part of its contract with Keeps, Twilio requires that "if [Keeps]

10   records or monitors . . . communications using [Twilio's software], then [Keeps] will comply

11   with all applicable laws prior to doing so," and it "will provide all required notices and secure all

12   required prior consents to record or monitor communications using [the software]."  Kanig Decl.,

13   Ex. F ¶ 5.2(a).  Indeed, Keeps executed a special addendum to its contract with Twilio regarding

14   protected health information, in which it specifically instructed that "[Keeps] will not request or

15   cause Twilio to Use or Disclose PHI in a manner that does not comply with HIPAA or this

16   Addendum."  Kanig Decl., Ex. G ¶ 6.4.  And Twilio's contract limited its use of any such data to

17   what was "necessary to (a) provide the Services . . . and (b) respond to any technical problems or

18   Customer queries[.]"  *Id.*, Ex. F ¶ 4.4.  But Plaintiff, despite alleging that this contract exists, has

19   not alleged any facts to suggest that Keeps or Twilio breached these privacy obligations.[5]

20          This is materially similar to the facts set out in this Court's order dismissing a third-party

21   pixel case against Google.  *See Doe I*, 2024 WL 3490744, at *4.  Google, the third-party software

22   provider there, specifically instructed website operators using its source code on their sites not to

23   share any health information with it.  *Id.*  Google thus lacked the requisite intent to violate the

24   CIPA, the California Constitution, or common law.  *Id.* at *4.  The same principle applies here.

---

[5] To the extent that Plaintiff asserts that Twilio did not intend to abide by its promise to receive customer information only in accordance with applicable law, his claims should be held to the heightened pleading standard for claims sounding in fraud under Rule 9(b).  *See Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021).  Plaintiff does not attempt to—and cannot—satisfy that standard because he has not alleged anything about a fraudulent scheme to deceive consumers, including the "who, when, where, and how."  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–1125 (9th Cir. 2009) (the Rule 9(b) standard).

2737453

1   "There is nothing inherently unlawful about [Twilio] offering its source code to health care

2   providers"— indeed, "data aggregation" is permitted under HIPAA[6]—"at least given [Twilio's]

3   admonitions that providers" must supply all necessary disclosures, secure all prior consent, and

4   comply with HIPAA and other applicable laws.  *See id.*  Because Twilio did not intend to receive

5   unauthorized PHI from Keeps, Plaintiff cannot plead the requisite *scienter* to support his claims.

6   **C.    Plaintiff's CIPA claims suffer from additional, incurable statutory defects.**

7   Beyond these global problems with Plaintiff's entire action, his CIPA claims suffer from

8   incurable statutory defects.  Plaintiff asserts at least two CIPA claims: (1) intentional wiretapping

9   under the first clause of Section 631(a); and (2) eavesdropping under Section 632.  It is unclear if

10  Plaintiff is asserting an "interception" claim under the second clause of Section 631(a), but given

11  his conclusory claim that Twilio "violated CIPA by intercepting patients' online communications

12  through the Website," Compl. ¶ 76, Twilio will assume he is trying to assert that claim, too.  To

13  the extent that Plaintiff also asserts a "use" claim under the third clause of Section 631(a), it is

14  derivative of his other CIPA claims, and fails, too.  *See Google Assistant*, 457 F. Supp. 3d at 827.

15  **1.    Twilio is exempt from Section 631 under the "party exception" rule.**

16  A party cannot wiretap or intercept its own communications under Section 631.  *Williams*

17  *v. DDRMedia, LLC*, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023) (citing *In re Facebook,*

18  *Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020); *Rogers v. Ulrich*, 52 Cal. App. 3d

19  894, 899 (1975)).  Thus, as a number of courts in this District have held, a third-party vendor who

20  provides software to a website operator to record their users' interactions with its website is not

21  wiretapping or intercepting those communications; they are merely "an extension of" the website

22  operator using their software.  *See, e.g.*, *DDRMedia*, 2023 WL 5352896, at *3 (marks omitted);

23  *What If Holdings*, 2022 WL 17869275, at *3; *Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021

24  WL 1428400, at *1, 3 (N.D. Cal. Apr. 15, 2021); *Johnson v. Blue Nile, Inc.*, No. 20-CV-08183-

25  LB, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021); *Graham*, 533 F. Supp. 3d at 833.

26

27  ---

[6] Although it does not supply the controlling legal standard here, it is true that "HIPAA allows a
covered entity to disclose protected information to a 'business associate'" for "data aggregation

28  services."  *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982,
at *18 (N.D. Cal. Apr. 11, 2024) (citing 45 C.F.R. §§ 164.502(e)(1)(i), 164.504(e)(2)(i)(B)).

2737453

Some courts have held that a software vendor may fall outside of the party exception where it uses data it receives for its own purposes.  *See Kaiser*, 2024 WL 1589982, at *18 (discussing and rejecting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023)). But Plaintiff's allegation that Twilio used his PHI for its own purposes is predicated solely upon materials that "do not support this assumption; indeed, they appear to contradict it."  *See Doe I*, 2024 WL 3490744, at *2.  None of those materials say—or even insinuate—that Twilio shares any data that it receives from one client with its other clients, let alone PHI.  To the contrary, Twilio's contract with Keeps prohibits Twilio from using PHI except as "necessary to (a) provide the Services . . . and (b) respond to any technical problems or Customer queries[.]"  Kanig Decl., Ex. F ¶ 4.4.  To that effect, the generic product descriptions that are incorporated into Plaintiff's complaint (mostly written by Twilio) make clear that Twilio enables its ***individual clients*** to "create[] unified customer profiles" by "merg[ing] the complete history of each customer into a single profile, no matter where they interact with ***your*** business."  Compl. ¶ 31 (emphasis added); *see also*, *e.g.*, *id.* ¶ 27 n.10 ("Segment empowers you to capture first-party customer data in real time.").  There are thus no well-pleaded allegations that Twilio furnished Keeps's customer data to another client or otherwise used that Keeps data for its own purposes.

Perhaps even more fundamentally, Plaintiff's complaint does not even allege that this consumer profiling functionality was enabled on the Keeps website.  Instead, Plaintiff improperly "assum[es] that [the consumer profiling] features of [Twilio's] products are being enabled on [the Keeps website], based simply on the fact that those features happen to be described in [Twilio's] generic product descriptions."  *See Doe I*, 2024 WL 3490744, at *3.  Plaintiff alleges no well-pleaded allegations to support this claim, and the source code he cites does not show that.

In sum, there are no well-pleaded allegations that Twilio used Keeps' customer data for its own purposes, or even that it was capable of doing so in light of its contract with Keeps, and the party exception applies with full force to Plaintiff's Section 631 claim.  *See Rodriguez v. Ford Motor Co.*, No. 3:23-cv-000598-RBM, 2024 WL 1223485, at *13 (S.D. Cal. Mar. 21, 2024).

///

///

TWILIO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:24-cv-03741-VC

2737453

**2.  Plaintiff cannot state a wiretapping claim under Section 631 because that claim applies only to telephonic communications, not the internet.**

Plaintiff's wiretapping claim under the first clause of Section 631(a) fails also because "[c]ourts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet." *Swarts*, 689 F. Supp. 3d at 743; *accord James*, 2023 WL 8879246, at *3 ("Section 631(a)'s plain text" applies only to telephones); *What If Holdings*, 2022 WL 17869275, at *2 ("[T]he first clause of Section 631(a) concerns telephonic wiretapping [and] does not apply to the context of the internet."). Because Plaintiff's complaint challenges alleged internet tracking, *see* Compl. ¶¶ 27–37, and not telephone communications, Plaintiff's wiretapping claim under Section 631 fails as a matter of law.

**3.  Plaintiff cannot state an interception claim under Section 631 because Twilio did not allegedly "intercept" his communications "in transit."**

To the extent that Plaintiff asserts a claim under the second clause of Section 631(a) for "intercepting" the contents of his communications with Keeps—and it is unclear if he does—that claim would fail also because he has not alleged that Twilio "intercepted" his data "in transit" between his device and the Keeps website. *See* Cal. Pen. Code § 631(a). To the contrary, he repeatedly alleges that *Keeps* installed Twilio's software on its website, collected his information, then *"disclosed"* that information to Twilio. Compl. ¶¶ 34–35, 40, 42; *see also id.* ¶ 27 n.10.

That is not interception in transit. For a communication to be "intercepted," it must be "acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiff's conclusory allegation that Twilio collects customer data from Keeps "in real time" does not satisfy that strict gating element. *See* Compl. ¶ 48. *Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (dismissing on this basis) (citing *Rodriguez v. Google LLC*, 20-cv-4688, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022)); *cf. In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) (interception in transit under Section 631(a) includes, for example, the "simultaneous, unknown duplication and communication of [web-server] requests").

///

2737453

1

### 4.   Plaintiff cannot assert a Section 632 claim because software is not a "recording device" and his communications were nonconfidential.

2

3       Plaintiff's Section 632 claim fails for two reasons.  ***First,*** Section 632 applies only to

4  "electronic amplifying or recording device[s]," not internet software.  Cal. Pen. Code § 632.  In

5  this way, Section 632 is much narrower in scope than Section 631(a).  Section 631(a) prohibits

6  wiretapping performed by "any machine, instrument, or contrivance, ***or in any other manner***."

7  *Id.* § 631(a) (emphasis added).  But "Section 632 prohibits 'eavesdropping,' *i.e.*, the interception

8  of communications by the use of ***equipment*** which is ***not connected to any transmission line***."

9  *People v. Ratekin*, 212 Cal. App. 3d 1165, 1168 (1989) (emphasis added).  This accords with the

10  plain meaning of "device" as it is used in this context: "a piece of equipment," *e.g.,* a "recording

11  device."  *Device*, Merriam-Webster Dictionary Online (2024); *Device*, Black's Law Dictionary

12  (12th ed. 2024) ("A mechanical invention . . . an apparatus or an article of manufacture").

13       Thus, internet "software does not constitute a 'device' under [Section 632 of] the CIPA."

14  *Microsoft*, 2023 WL 8780879, at *8; *accord In re Google Location Hist. Litig.*, 428 F. Supp. 3d

15  185, 193 (N.D. Cal. 2019) ("Software like Google Maps, Chrome, etc. are not "devices" within

16  the meaning of CIPA because they are not "equipment"); *cf. People v. Lyon*, 61 Cal. App. 5th

17  237, 245 (2021) (video recorders do qualify).  Indeed, courts have rejected that "devices" include

18  software in another provision of the CIPA.  *E.g., In Moreno v. San Francisco Bay Area Rapid

19  Transit Dist.*, No. 17-cv-02911-JSC, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017).

20       ***Second,*** even if Section 632 could apply, Plaintiff's communications with Keeps—as

21  opposed to the doctor to whom Keeps directed him—were nonconfidential.  Not only is there a

22  presumption that all internet-based communications are nonconfidential under Section 632, Keeps

23  told Plaintiff in its Privacy Policy that it may share his communications with third-party vendors

24  and service providers, and a wide variety of internet analytics and advertising companies.  *See*

25  *Revitch v. New Moosejaw, Inc.*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct.

26  23, 2019) (stating that a communication is confidential under Section 632 where the plaintiff "has

27  an objectively reasonable expectation that the conversation is not being overheard or recorded")

28  (citing *Flanagan*, 27 Cal. 4th at 776); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052 (N.D.

2737453

Cal. 2018) (even personal, romantic emails are not confidential); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (collecting cases); *see also* Kanig Decl., Ex. A ¶¶ 4, 8–9.

### D.   Plaintiff's constitutional and common law claims fail as a matter of law.

"The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038.  To state a constitutional claim, Plaintiff must plead: (1) a reasonable expectation of privacy under the circumstances; and (2) a serious invasion of that privacy constituting "an egregious breach of . . . social norms." *Hill*, 7 Cal. 4th at 35–37.  Courts apply these "threshold elements" to "weed out" claims that do not significantly intrude upon a "constitutionally protected privacy interest." *Loder v. City of Glendale*, 14 Cal. 4th 846, 893 (1997).  And because the "right to privacy in the California Constitution sets standards similar to the common law tort of intrusion," courts conduct a combined inquiry of both claims.  *Hernandez*, 47 Cal. 4th at 287.  Plaintiff did not have a reasonable expectation of privacy under the circumstances, and Twilio's conduct was not egregious or highly offensive.

*First,* Keeps informed its customers that it would share their personal information with third-party vendors and service providers like Twilio, as well as a variety of internet analytics and advertising companies.  Kanig Decl., Ex. A ¶¶ 4, 8, 9.  Plaintiff thus did not have a reasonable expectation of privacy in his communications with Keeps as to disclosed recipients like third-party vendors.  *See Hammerling*, 2024 WL 937247, at *3 (affirming dismissal for disclosure).

*Second,* there is no invasion alleged here that even approaches highly offensive conduct or an egregious violation of social norms.  Plaintiff alleges that Keeps contracted for Twilio's software, installed it on its website, and collected his information on a voluntary basis.  Thus, Twilio could not have intruded into Plaintiff's privacy ***at all***, much less in a manner that is highly offensive or an egregious breach of social norms.  *See, e.g., James*, 2023 WL 8879246, at *6 (dismissing on this basis); *DDR Media*, 2023 WL 5352896, at *7 (same); *Graham*, 533 F. Supp. 3d at 835-36 ("Because there was no plausible wiretapping by [the software vendor], the plaintiffs did not plausibly plead that they possess a legally protected privacy interest.").  Indeed, beyond the facts of those similar cases, Twilio instructed Keeps to make all necessary disclosures and secure all prior consent before using its software to collect customer information.  Twilio

2737453

1    additionally instructed Keeps not to improperly share any PHI in a special addendum.  Thus,

2    Twilio did not invade Plaintiff's privacy, and it did not want to invade Plaintiff's privacy.

3         To the extent there was any intrusion whatsoever, it was inactionable.  There is no well-

4    pleaded allegation that Plaintiff's data was not anonymized.  He asks this Court to ignore his own

5    allegation that his interactions with the intake quiz on the Keeps website ***were*** anonymized with a

6    "***segment_anonymous_id***."  Compl. ¶ 45, Fig. 3 (emphasis added).  "Although Plaintiff[]

7    postulate[s] that [Twilio] could, through inferences, de-anonymize this data"—for example, by

8    using Twilio's Engage and Identity Resolution features—"it is not clear that anyone has actually

9    done so, or what information, precisely, [Twilio has] obtained."  *See Low*, 900 F. Supp. 2d at

10   1025.  Further, Plaintiff wrongly assumes that these features were enabled on the Keeps website

11   merely because they appear in generic product descriptions.  *See Doe I*, 2024 WL 3490744, at *3.

12        There is also no well-pleaded allegation that Twilio misused Plaintiff's PHI in violation of

13   its contract with Keeps, given that Twilio was prohibited from using Keeps's customers' PHI for

14   non-Keeps purposes.[7]  But even if there were, "disclosure of personal information . . . does not

15   constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."

16   *Low*, 900 F. Supp. 2d at 1024–25 (dismissing these claims on this basis; collecting cases).

17        In sum, there are no well-pleaded allegations that Twilio ever invaded Plaintiff's privacy

18   in any manner, much less in a manner amounting to an "egregious breach of social norms"

19   sufficient to meet the "high bar" that serves as a gating function to weed out claims such as these.

20   **IV.     CONCLUSION**

21        Plaintiff's complaint should be dismissed in its entirety and with prejudice.

22   ///

23   ///

24   ///

25   ───────────────────────

26   [7] Plaintiff has even failed to allege well-pleaded facts in support of his claim that Twilio is the
     party responsible for him seeing internet ads about hair-loss treatments.  *See* Compl. ¶¶ 34–35,
27   37.  He makes this assumption exclusively because he saw internet ads relating to hair loss
     treatments after he purchased a hair loss treatment on the Keeps website, and Twilio's software
     appears in the source code on an intake questionnaire on the Keeps website.  *Id.* ¶¶ 5–7, 38–51.
28   But there are many reasons why Plaintiff could have seen those internet ads (*e.g.,* he ran a Google
     search about hair loss), and there is no basis to infer that it is because Twilio ran those ads.

2737453

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 19, 2024

KEKER, VAN NEST & PETERS LLP

By:   /s/ Ian Kanig
BENJAMIN BERKOWITZ
CHRISTINA LEE
IAN KANIG

Attorneys for Defendant
TWILIO INC.

TWILIO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:24-cv-03741-VC

2737453