**BURSOR & FISHER, P.A.**
Brittany S. Scott (State Bar No. 327132)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: bscott@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646-837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JONATHON PERRY-HUDSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

TWILIO, INC.,

Defendant.

Case No. 3:24-cv-03741-VC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION**

Date: October 31, 2024
Time: 10:00 a.m.
Courtroom: 4
Judge: Hon. Vince Chhabria

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ... 1

ARGUMENT ... 2

I. LEGAL STANDARDS ... 2

A. The Federal Arbitration Act ... 2

B. Mutual Assent Requires Conspicuous Notice ... 3

C. Nonsignatories Generally Cannot Enforce Arbitration Agreements ... 3

II. DEFENDANT HAS FAILED TO SATISFY ITS BURDEN OF SHOWING THAT PLAINTIFF AGREED TO ARBITRATE ... 4

III. PLAINTIFF DID NOT AGREE TO ARBITRATE WITH DEFENDANT ... 4

IV. EQUITY DOES NOT PERMIT DEFENDANT TO ENFORCE THE ARBITRATION PROVISION ... 7

A. Defendant Is Not Entitled To Equitable Estoppel ... 7

1. Plaintiff's Claims Are Not Intimately Founded In Or Intertwined With The Terms ... 7

2. Plaintiff Does Not Allege Concerted Misconduct Between Keeps And Defendant Bound Up With The Keeps Terms ... 10

B. The Arbitration Agreement Does Not Encompass Plaintiff's Claims ... 11

V. IN THE ALTERNATIVE, PLAINTIFF IS ENTITLED TO DISCOVERY ON WHETHER THERE WAS ASSENT TO THE ARBITRATION AGREEMENT ... 13

CONCLUSION ... 14

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Beltran v. PeopleReady, Inc.*,
2023 WL 3092973 (N.D. Cal. Apr. 25, 2023) ........ 13

*Berman v. Freedom Fin'l Network*,
30 F.4th 849 (9th Cir. 2022) ........ 3

*Chiron Corp. v. Ortho Diagnostic Sys.*,
207 F.3d 1126 (9th Cir. 2000) ........ 2

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ........ 3

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) ........ 12

*Doe v. Princess Cruise Lines, Ltd.*,
657 F.3d 1204 (11th Cir. 2011) ........ 12

*Ellington v. Eclipse Recreational Vehicles*,
2022 WL 72351 (9th Cir. Jan. 7, 2022) ........ 8

*Faucett v. Move, Inc.*,
2024 WL 2106727 (C.D. Cal. Apr. 22, 2024) ........ 4, 7, 9

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 2

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (2009) ........ 10

*Guisinger v. Keystone RV Co.*,
2024 WL 3384211 (9th Cir. July 12, 2024) ........ 8

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) ........ 2

*Howard v. Goldbloom*,
30 Cal. App. 5th 659 (2018) ........ 12

*Hunt v. Meta Platforms, Inc.*,
2024 WL 2503118 (N.D. Cal. May 24, 2024) ........ 9

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ........ passim

*Jones v. Halliburton Co.*,
583 F.3d 228 (5th Cir. 2009) ... 12

*Justus v. Foley RV Ctr., LLC.*,
2022 WL 18863744 (E.D. Wash. Feb. 23, 2022) ... 13

*Kashmiri v. Regents of Univ. of Cal.*,
156 Cal.App.4th 809 (2007) ... 5

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ... 10

*Lien v. City of San Diego*,
2021 WL 2072385 (S.D. Cal. May 24, 2021) ... 4

*Mattson Tech., Inc. v. Applied Materials, Inc.*,
96 Cal. App. 5th 1149 (2023) ... 10

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) ... 7

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ... 2

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ... 3

*Revitch v. DirecTV, LLC*,
977 F.3d 713 (9th Cir. 2020) ... 5

*Rice v. Downs*,
248 Cal. App. 4th 175 (2016) ... 5

*Sandquist v. Lebo Auto., Inc.*,
1 Cal. 5th 233 (2016) ... 13

*Sanford v. MemberWorks, Inc.*,
483 F.3d 956 (9th Cir. 2007) ... 2

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ... 3

*Smith v. Google, LLC*,
2024 WL 1171653 (N.D. Cal. Mar. 19, 2024) ... 7, 8, 10, 11

*Soltero v. Precise Distribution, Inc.*,
102 Cal. App. 5th 887 (2024) ... 3, 7, 8

*Stafford v. Rite Aid Corp.*,
998 F.3d 862 (9th Cir. 2021) ... 8

*Stover v. Experience Holdings*, Inc.,
978 F.3d 1082 (9th Cir. 2020) .......... 3

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017) .......... 12

*United States v. Bohn*,
956 F.2d 208 (9th Cir. 1992) .......... 4

*Uptown Drug Co. v. CVS Caremark Corp.*,
962 F. Supp. 2d 1172 (N.D. Cal. 2013) .......... 9

*Waymo LLC v. Uber Techs., Inc.*,
252 F. Supp. 3d 934 (N.D. Cal.) .......... 9

*Young v. ByteDance Inc.*,
700 F. Supp. 3d 808 (N.D. Cal. 2023) .......... 4

**STATUTES**

9 U.S.C. § 3 .......... 1

9 U.S.C. § 4 .......... 1, 2

Cal. Civ. Code § 1636 .......... 5, 6

Cal. Civ. Code § 1638 .......... 5

## INTRODUCTION

This case arises out of the egregious conduct of Defendant Twilio, Inc. ("Defendant" or "Twilio"), whose Software as a Service ("SaaS") surveillance product, the Segment API, was embedded onto the keeps.com website (the "Website") – the website for the prescription men's baldness and sexual health medication-provider Keeps. Plaintiff's Complaint (ECF No. 1) (the "Complaint" or "Compl.") ¶ 38. When Plaintiff purchased prescription medication via the Website in May 2024 to treat hair loss, Defendant used the Segment API to surreptitiously intercept Plaintiff's confidential Website communications with Keeps, including those containing personally identifiable information and protected health information, without his consent. *Id*. at ¶¶ 5-6.

Defendant has moved to compel individual arbitration pursuant to §§ 3 and 4 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 3-4, arguing that Plaintiff agreed to Keeps' Terms of Use (the "Terms") which require him to arbitrate this matter. *See generally* Mot. to Compel Arb. ("MTC"). Defendant argues it can enforce the purported arbitration agreement between Plaintiff and Keeps under the doctrine of equitable estoppel. *Id*. Defendant's argument lacks merit, and the Court should deny the Motion. Alternatively, the Court should: (1) find that genuine issues of material fact exist as to whether Plaintiff agreed to arbitrate with Keeps, and whether any such agreement benefits Defendant; and (2) order a jury trial on those issues.

The Court should deny Defendant's Motion for two reasons.

***First***, Defendant provides no evidence that Plaintiff was on notice of the existence of the arbitration agreement, despite Defendant bearing the burden to show "mutual assent to the contractual agreement to arbitrate." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023). Indeed, Defendant provides no evidence of: (1) what the Keeps account-creation process purportedly looked like at the time Plaintiff made his purchase; or (2) the functionality of any links on the Website to the Terms or Keeps' Privacy Policy (the "Privacy Policy").

***Second***, even if Plaintiff somehow agreed to the Terms, the arbitration agreement contained therein does not encompass the claims at issue in this case. Further, Defendant, a nonsignatory to the Terms, is not entitled to enforce the Terms under the doctrine of equitable estoppel.

Alternatively, to the extent the Court determines the factual record is insufficient to deny Defendant's motion, Plaintiff respectfully requests leave to conduct fact discovery on the issue of the formation of an arbitration agreement. As discussed more fully below, Plaintiff requires discovery in order to demonstrate that he never agreed to arbitrate with Keeps or Defendant.

## ARGUMENT

### I. LEGAL STANDARDS

#### A. The Federal Arbitration Act

Section 4 of the FAA addresses motions to compel arbitration. 9 U.S.C. § 4. Pursuant to § 4, a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration, may petition [a court with jurisdiction] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* If the court determines that the "making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.* The party alleged to be in default of the agreement may demand a jury trial. *Id.*

In examining a motion to compel arbitration, a court must determine: (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). When determining whether a valid and enforceable arbitration agreement exists, federal courts should apply "ordinary state-law principles that govern the formation of contracts . . . ." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[M]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). The party seeking to compel arbitration has the burden of showing mutual manifestation of assent. *Jackson*, 65 F.4th at 1099 (9th Cir. 2023).

The summary judgment standard applies to motions to compel arbitration. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021). In ruling on such a motion, a court must "give to the opposing party the benefit of all reasonable doubts and inferences." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007). "Although mutual assent is generally a question of fact, whether a certain set of facts is sufficient to establish a contract is a question of

law." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023). A court can only grant or deny a motion to compel arbitration if there are no genuine disputes of material fact as to whether an arbitration agreement was formed.

**B. Mutual Assent Requires Conspicuous Notice**

California law "is clear" that a person "is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Berman v. Freedom Fin'l Network*, 30 F.4th 849, 864 (9th Cir. 2022). To establish notice sufficient to give rise to mutual assent for the valid formation of an internet contract, a website operator must establish the contractual terms were presented to the consumer in a way that made it clear "the consumer was assenting to *those very terms*[.]" *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021) (emphasis added).

"Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. Thus, the onus is "on website owners to put users on notice of the terms to which they wish to bind consumers as consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound. *Jackson*, 65 F.4th at 1100 (cleaned up); *see also Stover v. Experience Holdings*, Inc., 978 F.3d 1082, 1086 (9th Cir. 2020) ("[T]he party alleging the existence of a contract [] has the burden to prove each element of a valid contract—including mutual assent."). Accordingly, when a hyperlink to an agreement is "not conspicuous enough to put [plaintiffs] on inquiry notice," then the agreement is not binding. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019).

**C. Nonsignatories Generally Cannot Enforce Arbitration Agreements**

"Although there is a strong public policy in favor of contractual arbitration, there is no policy compelling anyone to accept arbitration of controversies which they have not agreed to arbitrate. Because arbitration is a matter of contract, the basic rule is that one must be a party to an arbitration agreement to be bound by it or invoke it—with limited exceptions." *Soltero v. Precise*

*Distribution, Inc.*, 102 Cal. App. 5th 887, 322 (2024). Those exceptions are to be "narrowly construed." *Faucett v. Move, Inc.*, 2024 WL 2106727, *5 (C.D. Cal. Apr. 22, 2024).

## II. DEFENDANT HAS FAILED TO SATISFY ITS BURDEN OF SHOWING THAT PLAINTIFF AGREED TO ARBITRATE

As a threshold matter, the Court should deny Defendant's Motion because Defendant has failed to establish that Plaintiff entered into an arbitration agreement with Keeps. While Defendant argues "there is no question that Plaintiff entered into a valid and enforceable arbitration agreement," it fails to produce any evidence that Plaintiff was on notice of the purported agreement. MTC at 8.

Indeed, Defendant has done nothing to meet its burden. Defendant has produced no evidence in its Motion or attached declarations regarding the process by which a visitor to the Website would be on notice of, or agree to, the Terms. Nor has Defendant presented any evidence of Plaintiff's actual visit to, or activity on, the Keeps Website at the time he purportedly entered into an arbitration agreement.

In lieu of evidence, Defendant makes the conclusory statement that to create his Keeps account "Plaintiff was required to agree-and did agree- to the Keeps Terms[.]" MTC at 4. This falls far short of satisfying Defendant's burden, as it does not establish that Plaintiff was on notice of, and agreed to, the Terms or Privacy Policy. Importantly, Defendant may not present new evidence or make its missing arguments in its reply. *See, e.g., Lien v. City of San Diego*, 2021 WL 2072385, at *7 (S.D. Cal. May 24, 2021) ("The Court declines to consider this argument raised for the first time in the reply brief") (citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992)).[1]

## III. PLAINTIFF DID NOT AGREE TO ARBITRATE WITH DEFENDANT

Defendant argues that Plaintiff's claims should be resolved in arbitration because the arbitration agreement "covers this lawsuit." MTC at 8. The argument fails.

[1] All arguments not made in Defendant's motion are waived on reply, including whether arbitrability as to Twilio is delegated to an arbitrator. Plaintiff notes that even if Defendant made this argument, it would fail as "it's not clear how a nonparty to an arbitration agreement could ever invoke a delegation provision when seeking to compel arbitration based only on equitable estoppel." *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808, 813 (N.D. Cal. 2023).

Under California law, "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." *Rice v. Downs*, 248 Cal. App. 4th 175, 185 (2016). In California, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. Courts normally determine the mutual intention of the parties "from the written terms [of the contract] alone," so long as the "contract language is clear and explicit and does not lead to absurd results." *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal.App.4th 809, 67 Cal. Rptr. 3d 635, 652 (2007); *see also* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."), § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . .").

Here, even assuming a valid agreement between Plaintiff and Keeps, there is no evidence that Plaintiff and Keeps agreed that Defendant could enforce any part of the contract to Defendant's benefit. In fact, both versions of the Terms submitted by Defendant contain identical language explicitly defining the Terms as an agreement between Keeps and Plaintiff, which limits Keeps' liability:

> These Terms of Use ("Terms") govern your access to and use of our non-clinical services, interfaces, and properties, which include but are not limited to websites, mobile applications, software, email, social media and any other service or product contained or offered therein (collectively the "Service") ***that are owned or controlled by Thirty Madison, Inc. d/b/a Keeps*** ("Keeps," "we," "us," and "our") . . . These Terms affect your legal rights, responsibilities, and obligations; govern your use of the Service; are legally binding; limit Keep's liability to you; and require you to indemnify Keeps and to settle certain disputes through arbitration.

Kanig Decl. Ex. D-E (ECF Nos. 17-5, 17-6) (emphasis added).

Further, the two versions of the Terms make clear (using slightly different language) that no party besides Keeps and its specified affiliates (none of which are Twilio)[2] can invoke the Terms. The "Third Party Rights" section of the August 1, 2022 Terms provides:

> Unless ***expressly stated*** in these Terms, nothing herein is intended to confer any rights or remedies on any persons other than you, Keeps, KMG Medical Group,

[2] Twilio is not an affiliate of Keeps. *See Revitch v. DirecTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020) (holding that an affiliate is normally understood to be a company that is effectively controlled by or associated with another under common ownership or control).

> Hudson NYC Medical, and our affiliates. Moreover, nothing in these Terms is intended to relieve or discharge the obligations or liability of any third persons to you, Keeps, KMG Medical Group, Hudson NYC Medical, or our affiliates, nor shall any provision give any third parties any right of subrogation or action against you, Keeps, KMG Medical Group, Hudson NYC Medical, and our affiliates.

Kanig Decl. Ex. D (ECF No. 17-5) (emphasis added).

Similarly, the "Third Party Rights" section of the August 15, 2024 Terms[3] provides:

> Unless ***expressly stated*** in these Terms, nothing herein is intended to confer any rights or remedies on any persons other than you, Keeps, KMG Medical Group, and our affiliates. Moreover, nothing in these Terms is intended to relieve or discharge the obligations or liability of any third persons to you, Keeps, KMG Medical Group, or our affiliates, nor shall any provision give any third parties any right of subrogation or action against you, Keeps, KMG Medical Group, and our affiliates.

Kanig Decl. Ex. E (ECF No. 17-6) (emphasis added).

The Terms also make clear that Plaintiff did not agree to arbitrate claims with Defendant. The arbitration agreements in each version of the Terms are explicit in stating that only the website user and Keeps have agreed to arbitrate:

> By agreeing to these Terms, you understand and accept that the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision, and that ***you and Keeps*** are each waiving the right to a trial by jury or to participate in a class action. Moreover, you agree that this arbitration provision shall survive termination of these Terms and any other contractual relationship between ***you and Keeps***.
>
> If ***you desire to assert a claim against Keeps*** and elect to seek arbitration, you must first send to Keeps, by certified mail, a written notice of your claim ("Notice").

Kanig Decl. Ex. D-E (ECF Nos. 17-5, 17-6) (emphasis added).

As demonstrated above, Plaintiff did not agree to arbitrate claims against Defendant.

---

[3] Notably, the August 15, 2024 Terms post-date the June 21, 2024 filing of the Complaint in this matter and thus have no bearing on the case. Cal. Civ. Code § 1636 ("[a] contract must be so interpreted as to give effect to the mutual intention of the parties ***as it existed at the time of contracting.***") (emphasis added). Nonetheless, Plaintiff includes the analysis for the purposes of providing a complete response to Defendant's Motion.

## IV. EQUITY DOES NOT PERMIT DEFENDANT TO ENFORCE THE ARBITRATION PROVISION

### A. Defendant Is Not Entitled To Equitable Estoppel

Defendant argues it is "entitled to enforce Plaintiff's individual arbitration agreement with Keeps as a nonsignatory under California's doctrine of equitable estoppel." MTC at 7. Not so.

"[G]enerally only signatories to an arbitration agreement are obligated to submit to binding arbitration." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). However, "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement." *Soltero*, 102 Cal. App. 5th at 893.

Courts narrowly construe the equitable estoppel doctrine. *Faucett*, 2024 WL 2106727, at *5. There are two circumstances where a court may estop a party to an arbitration agreement from bringing claims against a nonparty in court:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Smith v. Google, LLC*, 2024 WL 1171653, at *3 (N.D. Cal. Mar. 19, 2024) ("*Smith*"). Neither circumstance is present here.

#### 1. Plaintiff's Claims Are Not Intimately Founded In Or Intertwined With The Terms

Defendant argues it "is entitled to enforce Plaintiff's arbitration agreement with Keeps because his claims against Twilio are 'intimately founded in and intertwined with' the privacy rights and obligations that are set out in that same agreement." MTC at 9. Defendant misreads both the contract at issue and the law.

As a threshold matter, the purported agreement at issue is the Terms – not the Privacy Policy incorrectly referenced in Defendant's argument. *See id.* As such, Defendant's argument that Plaintiff's claims are intertwined with the Privacy Policy is facially defective.

Even if Defendant were to rely on the Terms, its argument still fails. "The plaintiff's ***actual dependence on the underlying contract*** in making out the claim against the nonsignatory is always the sine qua non of an appropriate situation for applying equitable estoppel." *Soltero*, 102 Cal. App. 5th at 893 (cleaned up) (emphasis added). If a plaintiff's claims "merely reference an agreement with an arbitration clause, equitable estoppel will not warrant compelling arbitration." *Stafford v. Rite Aid Corp.*, 998 F.3d 862, 865-866 (9th Cir. 2021).

*Smith* is instructive. There, Google sought to bind the plaintiff to an arbitration agreement to which Google was not a party. *Smith*, 2024 WL 1171653 at *2. In rejecting Google's argument, the court found that the plaintiffs asserted only statutory claims, "none of which relies directly on the terms of any written agreement." *Id.* at *3. The court also rejected Google's argument that it was entitled to equitable estoppel because "plaintiffs could not have used [the service at issue] without assenting to H&R Block's agreement and the arbitration provision it included . . . ." *Id.* The court held that "it is not enough for an agreement to be one but-for causal link in a chain of events leading to the circumstances underlying a claim; the claim itself must stem from or be intertwined with the agreement." *Id.*; *see also Guisinger v. Keystone RV Co.*, 2024 WL 3384211, at *1 (9th Cir. July 12, 2024) (noting "[t]he California Courts of Appeal have long rejected but-for causation as the relevant standard for" equitable estoppel).

As in *Smith*, Plaintiff's claims do not rely directly on the Terms. Further, Plaintiff does not allege any part of the Terms satisfies an element of his claims. At best, the Terms may be "one but-for causal link in a chain in a chain of events leading to the circumstances underlying a claim." *See id*. That does not allow Defendant to invoke the equitable estoppel doctrine.

Moreover, Plaintiff's claims do not depend on the Terms. That is, Plaintiff asserts statutory, constitutional and common law claims that would not change in the absence of the Terms. As such, the claims are not dependent on, or otherwise intertwined, with the Terms. *See Ellington v. Eclipse Recreational Vehicles*, 2022 WL 72351, at *1 (9th Cir. Jan. 7, 2022) ("Even if Ellington had no purchase agreement with [the signatory to the agreement], his implied warranty claims against [the nonsignatory defendant] would remain unchanged. Accordingly, the district court correctly denied the motion to compel arbitration"); *Jackson*, 65 F.4th at 1102-03 ("[A]lthough membership in

Jackson's proposed class would require participation in the Amazon Flex program, the controversy in this case is ultimately not about any characteristics or conduct of class members, but whether Amazon is indeed liable for wiretapping and invasion of privacy.").

Further, Plaintiff "does not seek to simultaneously enforce" the Terms against Defendant "while attempting to avoid the arbitration provision." *Faucett*, 2024 WL 2106727, at *5. To the contrary, Plaintiff does not mention the Terms in his Complaint and, as discussed above, the Terms are only relevant to Keeps – a non-party. *See* § I, *supra*.

The case law relied on by Defendant is distinguishable. In *Hunt v. Meta Platforms, Inc.* 2024 WL 2503118 (N.D. Cal. May 24, 2024) (MTC at 12), the court allowed the defendants to invoke the equitable estoppel doctrine where the plaintiff's claims were "founded in or bound up with the terms [at issue]." *Hunt*, 2024 WL 2503118, at *3. In that case, the plaintiffs alleged fraud arising out of the terms as an element of one of his claims. *Id*. Plaintiff does not make similar allegations here.

Defendant's reliance on *Uptown Drug Co. v. CVS Caremark Corp.,* 962 F. Supp. 2d 1172 (N.D. Cal. 2013) (MTC at 12-13), is similarly misplaced. There, the court found that defendants that were not signatories to an agreement containing an arbitration provision were entitled to equitable estoppel on a single claim where: (1) the plaintiff had to show that a defendant's alleged misconduct exceeded the scope of the relevant agreement; and (2) "the complaint [was] replete with implicit references to that contract." *Id*. at 1185. Importantly, the court found the plaintiffs other claim was not intimately intertwined with the relevant agreement because the claim did not have "any significant foundation in [the relevant] provision or in the Agreement as a whole. *Id*. at 1186.

Unlike *Uptown Drug Co.*, Plaintiff does not mention or otherwise rely on the Terms (or the Privacy Policy, for that matter) in his claims. *See Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934, 940 (N.D. Cal.), *aff'd,* 870 F.3d 1342 (Fed. Cir. 2017) ("Waymo need not rely on the arbitration agreements in question to prove the improper means element of its misappropriation claims here. Thus, unlike the plaintiff in *Uptown*, Waymo is not equitably estopped to resist arbitration of those claims against defendants with whom it had no arbitration agreement.");

*Mattson Tech., Inc. v. Applied Materials, Inc.,* 96 Cal. App. 5th 1149, 1157 (2023) (Distinguishing *Uptown* when the plaintiffs' claims did not rely on the contract with the signatory defendant.).

**2. Plaintiff Does Not Allege Concerted Misconduct Between Keeps And Defendant Bound Up With The Keeps Terms**

Defendant also argues it is "entitled to enforce Plaintiff's arbitration agreement with Keeps on equitable estoppel grounds because Plaintiff alleges concerted misconduct between Twilio and Keeps[.]" MTC at 13. Not so.

"The doctrine of equitable estoppel applies where a signatory raises allegations of substantially interdependent and concerted misconduct by both a nonsignatory and a signatory." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1132 (9th Cir. 2013). However, "California state contract law does not allow a nonsignatory to enforce an arbitration agreement based upon a mere allegation of collusion or interdependent misconduct between a signatory and nonsignatory" unless "the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause. Id*. (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 219 (2009)) (emphasis in original).

As discussed throughout, Plaintiff's claims against Defendant are not "founded in and inextricably bound up with obligations imposed by" the Terms. *See Kramer*, 705 F.3d at 1132. Moreover, Plaintiff does not allege "substantially interdependent and concerted misconduct" between Keeps and Defendant. *See id.*

*Smith* is instructive. *Smith v. Google, LLC*, 2024 WL 1171653 (N.D. Cal. March 19, 2024). In *Smith*, the plaintiff alleged statutory claims relating to the disclosure of his sensitive tax information from the H&R Block Website. 2024 WL 1171653 at *1. Google, the defendant, was a nonsignatory to the H&R Block Online Services Agreement but sought to enforce the agreement's arbitration provision under the doctrine of equitable estoppel. *Id*. Despite the complaint containing specific allegations that H&R Block "was responsible for configuring" the data-disclosing tool and "made the decision to transmit data to Google," the court rejected the Google's argument that it was entitled to equitable estoppel, finding that:

> These allegations generally seem to show H&R Block acting independently from Google—making its own decisions regarding

> the use and implementation of Google's tools without further involvement from Google. And to the extent Google acted interdependently or in concert with H&R Block, there is no indication that Google interacted differently with H&R Block than with any other third parties that use its tracking tools. Indeed, in its motion to dismiss, Google emphasizes that its tracking tools are "products available in the market" to developers, that it is web developers who "are in control of how to implement Google Analytics on their websites," and that plaintiffs do not allege "that Google instructed the Websites to transmit to Google the purported financial data—or any other type of data at all." If Google interacted with H&R Block no differently from how it interacted with any other user of its off-the-shelf tracking tools, it is difficult to see how Google's actions could be 'founded in' or 'intimately connected with' the specific agreement that H&R Block allegedly had with its *own* users.

*Id*. at *3 (emphasis in original).

The exact same circumstances that precluded application of the equitable estoppel doctrine in *Smith* are present here and demand the same result. That is, to the extent Plaintiff alleges interdependent conduct between Defendant and Keeps, Plaintiff has made no allegations that Defendant "interacted differently with [Keeps] than any other third parties that use its tracking tools." *See id*. Further, Plaintiff does not allege that Defendant instructed Keeps on how to implement the Segment API or that Defendant was in control of how to implement the Segment API on the Website. *See id.* As in *Smith*, this Court should reject the plea to apply the equitable estoppel doctrine.

### B. The Arbitration Agreement Does Not Encompass Plaintiff's Claims

Contrary to Defendant's contention (MTC at 8), even if Defendant could enforce the Terms under the doctrine of equitable estoppel (it cannot), the Court should still deny Defendant's Motion because Plaintiff's claims fall outside of the scope of the purported arbitration agreement. The arbitration agreement in the Keeps Terms encompasses "[a]ny dispute, claim, or controversy arising out of or relating in any way to these Terms; the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate; or your use of the Site, including products purchased or services rendered

through the Site[.]" MTC at 4. As discussed below, this provision does not encompass Plaintiff's claims.

The Ninth Circuit's decision in *Jackson* controls. In that case, Amazon's arbitration clause encompassed "any dispute or claim arising out of or relating in any way to this Agreement, including participation in the program or performance of services." *Jackson*, 65 F.4th at 1095 (cleaned up). Despite this purportedly broad language, the Ninth Circuit held that claims that "existed independently of the contract . . . fell outside the scope of the arbitration provision." *Id.* at 1104. In reaching its holding, the Ninth Circuit determined that the claims at issue "existed independently" because "even if [the plaintiff] had no contract with Amazon . . . , he would be able to bring the same claims for invasion of privacy." *Id.* at 1103-04.

The holding in *Jackson* adhered to a long line of holdings from the Second, Fifth, Ninth, and Eleventh Circuits that rejected application of a broad arbitration clause to claims, like those here, that were independent of any contract. *See, e.g.*, *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183-84 (2d Cir. 2021); *Jones v. Halliburton Co.*, 583 F.3d 228, 240 (5th Cir. 2009); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219-20 (11th Cir. 2011); *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017). In general, those appellate courts found claims were not arbitrable where "the defendant could have engaged in the same conduct even in the absence of any contractual . . . relationship with the plaintiff, and a third party could have brought the same claims [] based on virtually the same alleged facts." *Welch*, 871 F.3d at 799 (cleaned up). In order to be arbitrable, claims must have "some direct relationship" or "direct connection" with even the broad language of a clause; "otherwise, the term would stretch to the horizon and beyond" or "be meaningless." *Princess Cruise Lines*, 657 F.3d at 1218-19.

Just as the claims in the above-cited cases were not arbitrable, neither are Plaintiff's claims. Plaintiff's claims involve Defendant's interception of his personally identifiable information, personal health information and confidential communications with Keeps. Compl. ¶ 2. The claims have no direct relationship to the Keeps Terms or Keeps' services generally – *i.e.*, the claims are independent of the Terms. Indeed, Plaintiff would still have a claim regardless of whether the Terms existed. *See Howard v. Goldbloom*, 30 Cal. App. 5th 659, 670 (2018) (finding claim was not

arbitrable because "Defendants' fiduciary duties to minority shareholders and alleged wrongs exist independently of any employment relationship between Howard and Kaggle.").

To the extent there is ambiguity in the Keeps Terms concerning whether Plaintiff's claim falls within the scope of the arbitration clause, "ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation." *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016).

## V. IN THE ALTERNATIVE, PLAINTIFF IS ENTITLED TO DISCOVERY ON WHETHER THERE WAS ASSENT TO THE ARBITRATION AGREEMENT

To the extent the Court determines that it cannot deny Defendant's motion as a matter of law, Plaintiff respectfully requests leave to conduct discovery on the issue of the formation of an arbitration agreement and to allow him the opportunity to obtain evidence to rebut Defendant's purported evidence.

Leave to conduct discovery relating to the existence and enforceability of an arbitration clause is routinely granted. *See Beltran v. PeopleReady, Inc.*, 2023 WL 3092973, at *8 (N.D. Cal. Apr. 25, 2023) (granting "limited discovery related to the alleged contract formation and violation" to resolve conflicting evidence on a motion to compel arbitration); *McCoy v. Google, LLC*, 2021 WL 6882419, at *2 (N.D. Cal. Nov. 9, 2021) ("The Court granted Plaintiff's motion to enlarge time to respond to Defendant's motion to compel arbitration . . . and permitted limited discovery related to issues of arbitrability"); *see also Justus v. Foley RV Ctr., LLC*, 2022 WL 18863744, at *1 (E.D. Wash. Feb. 23, 2022), reconsideration denied, 2022 WL 18859630 (E.D. Wash. Mar. 16, 2022) ("a party can conduct pre-arbitration discovery if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'").

While Plaintiff maintains that he did not enter into an arbitration agreement with Defendant and that Defendant is not able to enforce the purported arbitration agreement with Keeps, to the extent the existence of an arbitration agreement is relevant to the Court's analysis, there exist questions of fact as to whether: (1) Plaintiff agreed to the Terms; and (2) Plaintiff was, or a reasonable person would be, on notice of the terms. Notably, Defendant submits no evidence as to the account creation process encountered by Plaintiff and whether what Plaintiff saw during

that process would have put him or a reasonable person on notice of the Keeps Terms or Privacy Policy. *See, generally*, Kanig Decl. (ECF No. 17-1).

Based on the above, and in furtherance of his effort to show the lack of an enforceable agreement, Plaintiff seeks to serve interrogatories and requests for production of documents, as well as to depose relevant witnesses, relating to the following topics: (1) the account-creation process on the Keeps Website, including but not limited to the account-creation screens presented to Plaintiff at relevant times, the purported hyperlinks (and embedded URLs) purportedly presented to Plaintiff during his interactions with the Website, and the URLs to which any hyperlinks directed Plaintiff; (2) the functionality of the Website and relevant webpages at relevant times; (3) the design of the webpage on which the purported Terms were located at relevant times; (4) all versions of the Terms as implemented on the Website at relevant times; (5) the appearance of relevant Website pages when viewed on various devices and browsers; and (6) notice provided to Plaintiff regarding updates to the Terms.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.

Dated: September 19, 2024

**BURSOR & FISHER, P.A.**

By: */s/ Brittany S. Scott*
Brittany S. Scott

Brittany S. Scott (State Bar No. 327132)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: bscott@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646-837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)

6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*