**BURSOR & FISHER, P.A.**
Brittany S. Scott (State Bar No. 327132)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: bscott@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646-837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JONATHON PERRY-HUDSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

TWILIO, INC.,

Defendant.

Case No. 3:24-cv-03741-VC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date: October 31, 2024
Time: 10:00 a.m.
Courtroom: 4
Judge: Hon. Vince Chhabria

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 1

ARGUMENT ..... 2

I. PLAINTIFF DID NOT CONSENT TO DEFENDANT'S WIRETAPPING ..... 2

II. PLAINTIFF SUFFICIENTLY ALLEGES DEFENDANT INTENTIONALLY INTERCEPTED AND USED HIS PII AND PHI ..... 5

III. PLAINTIFF ALLEGES VIOLATIONS OF CIPA §§ 631 AND 632 ..... 8

A. Defendant Is A Third-Party Wiretapper ..... 8

B. CIPA § 631(a) Applies To Internet Communications ..... 9

C. Plaintiff Alleges His Communications Were Intercepted "In Transit' ..... 10

D. Plaintiff Alleges A Violation Of CIPA § 632. ..... 11

1. The Segment API Is An Electronic Amplifying or Recording Device ..... 11

2. Plaintiff's Communications Are Confidential ..... 13

IV. PLAINTIFF ALLEGES CALIFORNIA CONSTITUTIONAL AND COMMON LAW CLAIMS ..... 14

CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Balletto v. American Honda Motor Co., Inc.*,
2023 WL 7026931 (N.D. Cal. October 24, 2023) .......... 9

*Bernstein v. United Collection Bureau, Inc.*,
2013 WL 5945056 (S.D. Cal. Nov. 5, 2013) .......... 13

*Brown v. Google*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 13

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 15

*Calhoun v. Google, LLC*,
2024 WL 3869446 (9th Cir. Aug. 20, 2024) .......... 3, 4

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 11

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 11

*Doe I v. Google, LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) .......... 8

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 6, 12

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... 12

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .......... 14

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024) .......... 6

*EVO Brands, LLC v. Al Khalifa Grp. LLC*,
657 F. Supp. 3d 1312 (C.D. Cal. 2023) .......... 7

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 4

*Gladstone v. Amazon Web Services*,
2024 WL 3276490 (W.D. Wash. July 2, 2024) .......... 12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 9

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) .......... 11

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 14

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 15

*In re Carrier IQ*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 12

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 10, 11, 14

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 8

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 12

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 13, 14

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. March 25, 2024) .......... 7

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 3

*James v. Allstate Insurance Company*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......... 14

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 8, 9

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 3

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 6466195 (N.D. Cal. Oct. 3, 2023) .......... 5

*Lien v. City of San Diego*,
2021 WL 2072385 (S.D. Cal. May 24, 2021) .......... 3

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 8

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 10, 12

*Mirkarimi v. Nevada Prop. 1 LLC*,
2013 WL 3761530 (S.D. Cal. July 15, 2013) .......... 13

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .......... 12

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) .......... 14

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 10, 11

*Ribas v. Clark*,
38 Cal.3d 355 (1985) .......... 10

*Smith v. Google, LLC*,
2024 WL 2808270 (N.D. Cal. June 3, 2024) .......... 9

*Stephenson v. Drever*,
16 Cal.4th 1167 (1997) .......... 4

*Swartz v. Home Depot, Inc.*,
689 F.Supp.3d 732 (N.D. Cal. 2023) .......... 10

*Turner v. Nuance Communications, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) .......... 8

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) .......... 12

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 10

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 8, 9

**STATUTES**

Cal. Penal Code § 630 .......... 1

Cal. Penal Code § 631(a) .......... passim

Cal. Penal Code § 632 .......... passim

## INTRODUCTION

In its scattershot motion to dismiss (ECF No. 16) (the "Motion" or "MTD"), Defendant Twilio, Inc. ("Defendant" or "Twilio") improperly: (1) looks outside of Plaintiff's well-pled allegations in an effort to show that it did not intentionally intercept Plaintiff's sensitive and confidential communications; and (2) contends that its technology at issue – the Segment API – is not a recording device. When properly considered, Plaintiff's allegations make clear that Defendant engaged in the alleged wrongdoing and violated the California Information Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*, the California Constitution and common law. Plaintiff's allegations are simple and sufficiently set forth Plaintiff's claims: (1) Plaintiff, a patient visiting keeps.com (the "Website") to obtain prescription treatment for hair loss, had his private communications related to that treatment intercepted in real time by Defendant without his knowledge or consent. Complaint (ECF. No. 1) (the "Complaint" or "Compl."); and (2) Defendant used the intercepted information to add to its profiles of consumers across the internet and target them with advertisements. Accordingly, the Court should deny Defendant's Motion.

## STATEMENT OF FACTS

Plaintiff is a patient of Keeps, an online healthcare provider that sells prescription men's hair loss and sexual health medications. "On or around May 8, 2024, Plaintiff visited keeps.com to purchase prescription hair loss medication. As part of the purchase process, Plaintiff answered a series of questions related to his physical health. The questionnaire responses were given to a licensed medical provider who curated a customized treatment plan for Plaintiff." Compl. ¶ 5. Unbeknownst to Plaintiff, "Defendant intercepted communications sent and received [on the Website] by Plaintiff and Class Members[.]" *Id.* ¶ 2. Defendant accomplished this via "the Segment API," a piece of code that acts as a recording device on the webpages of Twilio's customers. *Id.* ¶ 3. Defendant's Segment API was installed "on each page of the [Keeps] questionnaire and checkout process to track users' responses to the questions and send those responses to Defendant so Defendant can analyze the information." *Id.* ¶ 42. "Defendant intercept[ed] each of these communications in real time and sen[t] the information to its own servers. Defendant then view[ed] each and every communication by Website visitors, store[d] the

intercepted data on its servers in California, and processe[d] the intercepted information for use in its advertised features." *Id.* ¶ 48.

"In addition to helping companies like Keeps make better use of their own customer information, Defendant use[d] such information for its own purposes. Defendant's business model, based around [creating] "Engage" profiles, requires that Defendant aggregate the information it intercepts from visitors of websites across the internet in order to create the hyper-specific consumer profiles . . . . The creation of these aggregate profiles improves customer advertising campaigns on the "Engage Destinations" platforms and, thus, makes Defendant's services more valuable, enabling it to attract future customers." *Id.* ¶ 55.

Defendant intercepted Plaintiff's personally identifiable information ("PII") and personal health information ("PHI") and used that information to create a hyper-specific profile related to Plaintiff. *See id.* ¶¶ 5-7, 29-31, 55. After Plaintiff made his purchase via the Website, Plaintiff was subsequently targeted with advertising based the information he entered into the Website. *See id.* ¶¶ 5-7.

## ARGUMENT

### I. PLAINTIFF DID NOT CONSENT TO DEFENDANT'S WIRETAPPING

Improperly relying on information outside of the Complaint, Defendant primarily argues that dismissal is proper because Keeps' Privacy Policy disclosed that Keeps shared customers' information. *See* MTD at 2-3, 4-5, 7-8. Plaintiff addresses the impropriety of Defendant's extrinsic evidence in his opposition to Defendant's request for judicial noticed (the "RJN Opposition") filed contemporaneously herewith and incorporated herein. Defendant's improper reliance on extrinsic evidence is fatal to its argument and its Motion.

Even if the Court considers the Privacy Policy, it is not "an overriding obstacle to Plaintiff's claims," as Defendant contends. MTD at 8. Notwithstanding its improper reliance on extrinsic materials, Defendant has not come forward with any evidence setting forth the process by which a visitor to the Website, including Plaintiff, would be on notice of the Privacy Policy. Rather, Defendant merely concludes that "Keeps presented Plaintiff with the Keeps Privacy Policy." *Id.* at 4. Defendant's conclusory statement does not show that Plaintiff was on notice of the Privacy

Policy or that he was aware of any disclosures therein. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023) ("[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers"). Defendant cannot remedy in its reply its failure to come forward with the necessary evidence or arguments, as it has waived any such arguments. *See, e.g., Lien v. City of San Diego*, 2021 WL 2072385, at *7 (S.D. Cal. May 24, 2021).

Regardless of any disclosures made in the Privacy Policy, the Complaint makes clear that all of the alleged interceptions, including the interceptions of Plaintiff's PII and PHI, occurred without Plaintiff being prompted to review or agree to the Privacy Policy. *See* Compl. ¶¶ 44-51 (screenshots of purchase process and interceptions). Defendant submits no contrary evidence (and is prohibited from doing so) showing that Plaintiff consented to the Privacy Policy prior to Defendant intercepting his PII and PHI. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("[W]e conclude that the California Supreme Court would interpret Section 631(a) to require the ***prior*** consent of all parties to the communication.") (emphasis added).

Finally, even if Defendant could establish Plaintiff was on notice of the Privacy Policy, its argument that "Plaintiff's action fails because Keeps disclosed it may share his information with third-party vendors like Twilio for marketing and advertising purposes" (MTD at 7) lacks merit. At issue is not whether Keeps ***disclosed*** the underlying conduct, but rather whether ***all parties consented*** to the underlying conduct. *See* Cal. Penal Code § 631(a) ("Any person . . . who willfully and without the ***consent of all parties*** to the communication . . . .") (emphasis added); Cal. Penal Code § 632 (A person who, intentionally and without the ***consent of all parties*** . . . .") (emphasis added). Defendant points to no language showing that Plaintiff affirmatively consented to Defendant's alleged unlawful conduct.

Any contention by Defendant that Plaintiff somehow provided affirmative consent merely by being aware of the Privacy Policy's terms, at best, raises a question of fact that cannot be resolved at this early stage. The Ninth Circuit's recent holding in *Calhoun v. Google, LLC*, 2024 WL 3869446 (9th Cir. Aug. 20, 2024), is instructive. There, the defendant argued that the plaintiffs consented to the alleged improper data collection when they agreed to the defendant's privacy policy. *Id.* at *3. The Ninth Circuit rejected this argument, holding that: (1) "the governing

standard is what a 'reasonable user' of a service would understand they were consenting to, not what a technical expert would" (*id.* at *7); (2) "in the light most favorable to Plaintiffs, a reasonable user would not necessarily understand that they were consenting to the data collection at issue" (*id.* at 8-9); and (3) "applying the correct standard reveals disputes of material fact regarding whether 'reasonable' users of [the defendant's] product consented to [the defendant's] data collection practices." *Id.*; *see also Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) (same).

Applying *Calhoun*, and viewing Plaintiff's allegations in the light most favorable to Plaintiff: (1) assuming a reasonable user of the Keeps Website was aware of the Keeps Privacy Policy, that user would not necessarily understand they were consenting to Defendant's invasive data interceptions; and (2) disputes of material fact exist as to whether reasonable users of the Website consented to Keeps' data disclosure practices or Defendant's interception practices. This conclusion is underscored by Plaintiff's allegations – which make clear that Plaintiff did not consent to Defendant's alleged unlawful conduct (Compl. ¶¶ 6, 51, 73, 86) and the Privacy Policy, itself.

Indeed, while the Privacy Policy describes Keeps' "information processing activities," none of those activities includes the disclosure of Website users' PII and/or PHI to third-party advertisers like Defendant to use the information for their own purposes. *See* ECF No. 17-2 (Keeps Privacy Policy) ¶ 3. Further, while the Privacy Policy identifies various tracking technologies used on the Website, it does not identify Defendant or its Segment API. *See id.* ¶ 5. The failure to identify Defendant or the Segment API: (1) negates any inference that Plaintiff or others consented to Defendant's alleged unlawful activity. *See Stephenson v. Drever* 16 Cal.4th 1167, 1175 (1997) ("The fact that the contract expressly so provides tends to negate any inference that the parties also intended another consequence to flow from the same event. *Expressio unius est exclusio alterius*."); or, at worst, (2) raises a question of fact.

Additionally, the "Advertisement" section of the Privacy Policy only relates to advertising *by Keeps itself,* not by unrelated third parties. MTD at 8 ("Keeps disclosed in its Privacy Policy that it '"may [] share your Personal Information with entities that assist us [meaning Keeps] with

marketing and advertising."). A reasonable user would not take this to mean their PII and/or PHI would be intercepted by third parties to use for their own purposes, which is what Plaintiff alleges. Compl. ¶ 48 ("Defendant [] views each and every communication by Website visitors, stores the intercepted data on its servers in California, and processes the intercepted information for use in its advertised features.").

Based on the above, Plaintiff did not consent to Defendant's alleged unlawful interception of Plaintiff's PII and PHI or, at minimum, questions of fact exist that cannot be resolved at this early stage. Accordingly, the Court should deny the Motion.

## II. PLAINTIFF SUFFICIENTLY ALLEGES DEFENDANT INTENTIONALLY INTERCEPTED AND USED HIS PII AND PHI

Improperly ignoring Plaintiff's allegations and improperly relying on extrinsic materials, Defendant argues "Plaintiff has not pleaded and cannot plead, that Twilio willfully or intentionally invaded his privacy." MTD at 9. This is incorrect.

"Recording a confidential communication is intentional where the recording entity has the 'purpose or desire' of recording the communication or the 'knowledge to a substantial certainty' the communication will be recorded." *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 6466195, at *4 (N.D. Cal. Oct. 3, 2023). Plaintiff has sufficiently alleged Defendant had the "purpose or desire" of recording Website users' confidential communications and the "knowledge to a substantial certainty" that deployment of the Segment API would record such communications. *See id.*

Plaintiff alleges "Defendant collects information from keeps.com and sends back an analysis of that information, identifying website traffic and ad performance and targeting ads for specific individuals." Compl. ¶ 53. Relatedly, Plaintiff makes detailed allegations regarding Defendant's use of the communications it intercepted via the Website. For instance, Plaintiff alleges that: (1) "[a]fter placing his order from the Website, Plaintiff began receiving targeted advertisements related to hair loss products" (*id.* ¶ 8); (2) targeting based on Plaintiff's communications via the Website was possible because the information Defendant obtained through its wiretaps allowed it to aggregate the data and provide targeted advertising (*id.* ¶¶ 30-38); and (3) Defendant used the intercepted communications for its own purposes, such as, *inter alia*, to

"generate[] its own revenue by information mining internet activity and using that information for targeted advertising and building profiles of consumers." *Id.* ¶ 56; *see also id.* ¶¶ 53-55, 57.

Further, the nature of Plaintiff's allegations regarding Defendant's "Engage" profiles indicate an intentional "use" of Plaintiff's communications in violation of CIPA § 631(a). Plaintiff alleges that Defendant "tak[es] event data from across devices and channels and intelligently merg[es] it into complete user- or account-level profiles." *Id.* ¶ 30. This necessarily involves matching existing data possessed by Defendant with the data received from Keeps, which could not happen if sensitive data was only received accidentally and in a passive manner. *Id.* ¶ 48 ("Defendant then views each and every communication by Website visitors, stores the intercepted data on its servers in California, and processes the intercepted information for use in its advertised features as described" in detail in the Complaint).

At this stage, Plaintiff's allegations are sufficient to show Defendant's intent. *See Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *2 (S.D. Cal. Mar. 18, 2024) (finding allegations of the defendant profiting from data collected to identify anonymous individuals sufficient to infer the defendant used the data for its own purposes). When viewed in the light most favorable to Plaintiff, Defendant cannot credibly argue that Plaintiff's allegations and the reasonable inferences therefrom show anything other than Defendant's intent to obtain and use the PII and PHI or Website users, including Plaintiff. To extent there is any question regarding Defendant's intent, that is a factual question not ripe for resolution on a motion to dismiss. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) ("what [the defendant's] true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record.").

Without a valid basis to properly challenge Plaintiff's Complaint, Defendant resorts to improperly relying on extrinsic materials – namely, a purported agreement between Defendant and Keeps. *See* MTD at 9. While Defendant asks the court to take judicial notice of the extrinsic materials (ECF No. 17), as set forth in the RJN Opposition, the Court should not do so. Defendant offers the purported agreement to dispute the facts pled in the Complaint. This is improper because

"[a] court may not take judicial notice of the truth of disputed factual matters at the pleading stage." *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1320–21 (C.D. Cal. 2023).

Even if the Court were to consider Defendant's extrinsic evidence, that evidence does not negate Plaintiff's allegations of intentional interception and, at best, gives rise to factual questions. According to Defendant, the agreement between Defendant and Keeps provides that "[Keeps] will not request or cause Twilio to Use or Disclose PHI in a manner that does not comply with HIPAA or this Addendum." MTD at 9. Even if true, this provision relates to Defendant's use or disclosure of PHI, not its collection of that information in the first instance. In no circumstance does the provision preclude Defendant from receiving communications in violation of CIPA. To the extent Defendant contends the provision somehow precludes Keeps from providing Defendant with HIPAA-related information, a factual inquiry into which intercepted communications were HIPAA-related would be necessary, as CIPA is not limited to HIPAA-related communications. *See* Cal. Pen. Code § 631(a).

Defendant's reliance on boilerplate language in the purported agreement that provides that Keeps is required to "comply with all applicable laws" and "provide all required notices" (MTD at 9) fares no better. At this stage, the language in those provisions does not establish that Defendant did not intend to intercept confidential information as a matter of law. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *5 (N.D. Cal. March 25, 2024) ("Whatever agreements may have been in place, those agreements do not establish as a matter of law that Meta did not intend to receive the information plaintiffs claim was transmitted.").

Even if the purported agreement between Defendant and Keeps precluded Defendant from intercepting or receiving information from Keeps in violation of CIPA, at best that would raise a question of fact as to whether Defendant and Keeps adhered to the agreement. Plaintiff alleges that Keeps was warned in 2023 that its website was disclosing sensitive information to third parties (Compl. ¶ 24) and that the Segment API was embedded into the Website since at least 2024 (*id.* ¶ 42). Given that the warning postdates the agreement relied on by Defendant (*see* ECF Nos. 17-7, 17-8), an issue of fact exists as to whether Defendant collected PII and PHI via the Website

notwithstanding the agreement. Moreover, to the extent Defendant was aware of the 2023 warning and continued to collect PII and PHI via the Website, Defendant's conduct was intentional. *See Lopez v. Apple, Inc.,* 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) ("At the pleading stage, however, interception may be considered intentional 'where a defendant is aware of the defect causing the interception but takes no remedial action.'") (quoting *In re Google Assistant Priv. Litig.,* 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020)).

*Doe I v. Google, LLC*, 2024 WL 3490744 (N.D. Cal. July 22, 2024), relied on by Defendant (MTD at 9), is distinguishable. Unlike here, in *Doe I*, the complaint itself included information "that [the defendant] repeatedly told developers not to send personally identifiable information," which negated the allegations of intentional wiretapping. *Id*. at 4. Plaintiff does not similarly plead himself out of court.

## III. PLAINTIFF ALLEGES VIOLATIONS OF CIPA §§ 631 AND 632

### A. Defendant Is A Third-Party Wiretapper

Defendant argues it "is exempt from Section 631 under the 'party exception rule.'" MTD at 10. Not so.

As a "growing number of district courts" have recognized, a software-as-a-service provider ("SaaS") is a third-party wiretapper under CIPA § 631(a) if it has "capability to use its record of the interaction for any other purpose" beyond merely making the recording. *See Turner v. Nuance Communications, Inc.*, 2024 WL 2750017, at *9-10 (N.D. Cal. May 28, 2024) (cleaned up); *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023). The SaaS need not actually use the recorded data for another purpose, so long as it has the capability to do so. *See Javier*, 649 F. Supp. 3d at 900 (finding that SaaS provider was a third party where it "can use that information for other purposes, even if [plaintiff] has not alleged that they have done so in this case").

Plaintiff alleges that Defendant had the capability to use the communications it intercepted from Keeps for purposes beyond merely recording it. Specifically, Plaintiff alleges Defendant had the capability to use the intercepted communications for a number of purposes other than simply providing them to Keeps, such as creating "Engage" profiles of consumers and improving its own

services. Compl. ¶ 55.

Notwithstanding the above-described caselaw and Plaintiff's allegations, Defendant argues that "a third-party vendor who provides software to a website operator to record their users' interactions with its website is not wiretapping or intercepting those communications; they are merely 'an extension of' the website operator using their software." MTD at 10. The lead case supporting Defendant's argument is *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (MTD at 10). But *Graham* has been discredited.

"*Graham* and its progeny are based on a misinterpretation of Section 631 and *Ribas* [*v. Clark*], both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant." *Yockey*, 688 F. Supp. 3d at 972; *see also, e.g.*, *Javier*, 649 F. Supp. 3d at 900 (rejecting *Graham*); *Balletto v. American Honda Motor Co., Inc.*, 2023 WL 7026931, at *2 (N.D. Cal. October 24, 2023) (same). Thus, the Court should give *Graham* and cases employing its reasoning no weight.

Defendant's reliance on its purported agreement with Keeps to demonstrate that it did not use Plaintiff's data for its own purposes (MTD at 11) is improper, as discussed above. Moreover, that Defendant and Keeps may have an agreement discussing how Defendant may use the data it intercepted via the Website does not mean that: (1) Defendant was incapable of using the information for some other purpose; or (2) Defendant abided by the agreement. As alleged, Defendant could and did use the intercepted data for its own purposes. *See, e.g.*, Compl. ¶¶ 48, 55. Plaintiff's "allegations, which must be taken as true, suggest that [Defendant] is not simply a vendor of a tool that websites can use to 'record' their own users' interactions on their websites, but rather that [Defendant] read or used the data collected about these users." *Smith v. Google, LLC*, 2024 WL 2808270 at *4 (N.D. Cal. June 3, 2024).

**B. CIPA § 631(a) Applies To Internet Communications**

Defendant argues that "Plaintiff cannot state a wiretapping claim under Section 631 because that claim applies only to telephonic communications, not the internet." MTD at 12. Not so.

CIPA § 631(a) has four clauses that establish liability. Cal. Pen. Code § 631(a). While Defendant is correct that the first clause is limited to communications passing over telegraph or

telephone wires, the second and third clauses are not constrained by that limitation. *Matera v. Google Inc.*, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016). Indeed, the cases Defendant cites for support also acknowledge the difference between the applicability of the first and second clauses. *See Swartz v. Home Depot, Inc.*, 689 F.Supp.3d 732, 743-744 (N.D. Cal. 2023) (noting that "[c]ourts have uniformly interpreted [the first] clause as applying only to communications transmitted over telephones and not those transmitted over internet" but that the second clause is applicable to internet claims such as data mining); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (noting that "the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet" but that the "courts have applied Section 631(a) via the language of its second clause to the internet browsing context."). Thus, as Plaintiff alleges (Compl. ¶ 13), the second clause of § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera*, 2016 WL 8200619, at *21 (holding that CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA claims based on Facebook's collection of consumers' internet browsing history).

### C. Plaintiff Alleges His Communications Were Intercepted "In Transit'

Defendant argues that "Plaintiff cannot state an interception claim under Section 631 because Twilio did not allegedly 'intercept' his communications 'in transit.'" MTD at 12. Not so.

In making this argument, Defendant "ignores the plain language of section 631." *Ribas v. Clark*, 38 Cal.3d 355, 359 (1985). CIPA § 631(a) is written in the disjunctive, imposing liability for eavesdropping on a communication "while [it] is in transit or passing over any wire, line, or cable, *or* is being sent from, *or* received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). Thus, CIPA § 631 penalizes third parties who intercept communications "while the communication[s] [are] either 'in transit' *or* [are] 'being sent from' and 'received at' a place within this state." *Ribas*, 38 Cal.3d at 360 (emphasis added); *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("the particulars of the eavesdropping

mechanism are of little consequence to the section 631 analysis" because "[s]ection 631's protections extend explicitly to the beginnings and ends of communications"). Accordingly, even if Plaintiff's communications were not intercepted "in transit" (and they were) his communications were "sent from, or received at, a place within this state." *See* Compl. ¶¶ 28-57.

Beyond § 631(a)'s plain language, courts routinely find simultaneous duplication and interception of communications sufficient to meet the "in transit" requirement. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 608 (9th Cir. 2020) ("[S]imultaneous, unknown duplication and communication . . . do[es] not exempt a defendant from liability . . . . Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion"); *Revitch*, 2019 WL 5485330, at *2 ("Even if the browser caused a parallel signal to be sent to NaviStone, that intervention happened while the signal was already in transit from Revitch's device."); *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *8 (C.D. Cal. July 19, 2024); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130-31 (S.D. Cal. 2023). Here, contrary to Defendant's argument, Plaintiff alleges detailed facts showing that the Segment API intercepted user communications in transit: "Through the Segment API, Defendant intercepts each of these communications in real time and sends the information to its own servers[.]" Compl. ¶ 49; *see also id*. ¶¶ 46-48, 51 (describing specific information entered by Plaintiff into Defendant's Website that was simultaneously intercepted). Even absent Plaintiff's detailed allegations, his mere allegations that Defendant intercepted his communications while "in transit" prior to reaching their final destination (Compl. ¶ 48) are sufficient. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (accepting allegations that communications occur "in transit" and explaining that consideration of evidence to the contrary would be "premature" absent a "more developed factual record.").

### D. Plaintiff Alleges A Violation Of CIPA § 632.

#### 1. The Segment API Is An Electronic Amplifying or Recording Device

Defendant argues that "Section 632 applies only to 'electronic amplifying or recording

devices,' not internet software." MTD at 13. But the Segment API is a recording device under Section 632. "The majority of courts to consider this issue . . . have entertained the notion that software may be considered a device for the purpose of the Wiretap Act." *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 ("I agree that the Pixel software is a device under [CIPA] section 632(a)."); *In re Carrier IQ*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) ("Plaintiffs have sufficiently alleged that the Carrier IQ Software is a 'device.'").

Inexplicably, Defendant's argument divorces the software from the physical, tangible computer the software is running on. Such an interpretation flies in the face of the California Supreme Court's directive to apply CIPA "to new technologies where such a reading would not conflict with the statutory scheme." *Matera*, 2016 WL 8200619, at *20.

*Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023), relied on by Defendant (MTD at 13), is unpersuasive. In *Doe*, the court relied on two decisions concerning CIPA § 637.7 that Defendant also cites: *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019), and *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017). "Section 632 contains materially different language than Section 637.7, and it does not contain similar context that would narrow the meaning of 'device' here." *Gladstone v. Amazon Web Services*, 2024 WL 3276490, at *9 (W.D. Wash. July 2, 2024) (distinguishing *In re Google Location History Litig.*).

Specifically, CIPA § 637.7(d) defines a device as something "attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." By contrast, CIPA § 632 was enacted "to be more expansive," and "the Ninth Circuit has observed the California Supreme Court's instruction that 'all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA.'" *Gladstone*, 2024 WL 3276490, at *7-8; *see also Matera*, 2016 WL 8200619, at *19 ("[W]hen faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection.").

**2. Plaintiff's Communications Are Confidential**

Defendant argues that Plaintiff's § 632 claim fails because internet communications are presumptively nonconfidential and that "Keeps told Plaintiff in its Privacy Policy that it may share his communications with third party vendors[.]" MTD at 13. That is false.

"Nothing in Section 632 ties confidentiality to the mode in which a conversation is recorded." *Brown v. Google*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023). "That [] communications occurred over the internet does not automatically mean that plaintiffs gave up th[e] expectation of privacy . . . . Times change, as do modes of communication." *Id. at* 939. "Rather, the inquiry is whether 'any party to the communication desires it to be confined to the parties thereto.'" *Id.*; *see also Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530, at *2 (S.D. Cal. July 15, 2013). Thus, it is sufficient that Plaintiff alleges he reasonably expected that his communications regarding his PHI would be confined to him and Keeps. *See* Compl. ¶¶ 18, 52.

Even if Plaintiff must "show[] that there is something unique about these particular internet communications which justify" their confidentiality, Plaintiff has done so. *In re Meta Pixel Healthcare Litig.* ("*In re Meta Pixel*"), 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). Courts find communications "confidential" when protected under applicable laws, regulations, and industry norms. *See, e.g.*, *In re Meta Pixel*, 647 F. Supp. 3d at 799 (finding communications confidential when protected by federal law); *Bernstein v. United Collection Bureau, Inc.*, 2013 WL 5945056, at *4 (S.D. Cal. Nov. 5, 2013) ("The conversation allegedly included discussions protected by the attorney-client privilege, . . . as well as highly personal and private financial information . . . . Plaintiff has sufficiently alleged that he had a reasonable expectation the conversation would not be recorded."). Here, Defendant violated Plaintiff's reasonable expectation of privacy by enabling the interception of his PHI. Compl. ¶¶ 15-27.

Furthermore, as described above, even if Defendant could rely on the Keeps Privacy Policy and Plaintiff had notice of it, that policy does not disclose the type of information sharing alleged in the Complaint. *See, supra,* Argument § I(B). As such, the existence of the Privacy Policy does nothing to counteract Plaintiff's allegation that the intercepted communications were confidential.

## IV. PLAINTIFF ALLEGES CALIFORNIA CONSTITUTIONAL AND COMMON LAW CLAIMS

Defendant contends Plaintiff has failed to plead facts satisfying any of the elements of his invasion of privacy claims. *See* MTD at 14-15. That contention is meritless.

To state a claim for invasion of privacy, a plaintiff must allege that: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) ("The right to privacy in the California Constitution sets standards similar to the common law tort of intrusion."). "It is well-settled under California law that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022). Further, because "patient-status and medical-related communications between patients and their medical providers are protected by federal law" and are "almost uniquely personal," "communications made in the context of a patient-medical provider relationship are readily distinguishable from" general online communications. *In re Meta Pixel,* 647 F. Supp. 3d at 800.

Defendant contends "there is no invasion alleged here that even approaches highly offensive conduct or an egregious violation of social norms." MTD at 14. The contention is unsupported.

***First***, Defendant argues that "Keeps contracted for Twilio's software, installed it on its website, and collected [Plaintiff's] information on a voluntary basis" and, as such, "Twilio could not have intruded into Plaintiff's privacy ***at all***[.]" *Id.* (emphasis in original). Defendant ignores that Plaintiff did not voluntarily provide his PII and PHI to Defendant and that Defendant used the data for its own purposes. Defendant's independent use of his highly-sensitive data distinguishes this case from *James v. Allstate Insurance Company*, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023), and the other cases relied on by Defendant (MTD at 14).

Given the nature of the data Defendant intercepted (*see* Compl. ¶ 2), Defendant's contention that there was no serious invasion of privacy is nonsensical. *See Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813 (N.D. Cal. 2023) ("Personal medical information is understood

to be among the most sensitive information that could be collected about a person."); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) (even negligent disclosure of medical information is "more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'"); *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 531 (N.D. Cal. 2021) (surreptitious collection of data contrary to representations is highly offensive). Furthermore, Defendant does not cite a single case holding that the unauthorized disclosure of medical information is not a serious invasion of privacy. *See* MTD at 15.

***Second***, Defendant argues that "[t]here is no well-pleaded allegation that Plaintiff's data was not anonymized." MTD at 15. That is false. Plaintiff alleges that '[t]hrough the Segment API, Defendant intercepts each . . . communication[] in real time and sends the information to its own servers. Defendant then views each and every communication by Website visitors, stores the intercepted data on its servers in California, and processes the intercepted information for use in its advertised features as described above. After completing the questionnaire, website visitors are recommended a treatment plan and are prompted to make an account. During the account creation process, Website visitors are prompted to enter their ***full name, email address, date of birth, and gender.***" Compl. ¶¶ 49-50 (emphasis added). Plaintiff further alleges that he was targeted with ads regarding the services Keeps provided to him after entering his data into the Website (*id.* ¶ 7), something that could not have occurred if his data was anonymized.

***Third***, Defendant contends Plaintiff cannot state a claim for invasion of privacy because "Keeps informed its customers that it would share their personal information with third-party vendors and service providers like Twilio, as well as a variety of internet analytics and advertising companies." MTD at 14. However, as discussed *supra,* this argument is without merit or, at best, raises questions of fact. *See, supra,* Argument § I(B).

Thus, Plaintiff sufficiently pleaded an offensive and egregious intrusion into his privacy by Twilio.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied.

Dated: September 19, 2024

**BURSOR & FISHER, P.A.**

By: *_/s/ Brittany S. Scott_*
Brittany S. Scott

Brittany S. Scott (State Bar No. 327132)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: bscott@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646-837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*