KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
IAN KANIG - # 295623
ikanig@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant
TWILIO INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHON PERRY-HUDSON, individually and on behalf of all others similarly situated,,<br><br>Plaintiff,<br><br>v.<br><br>TWILIO, INC.,<br><br>Defendant. | Case No. 3:24-cv-03741-VC<br><br>**REPLY IN SUPPORT OF DEFENDANT TWILIO INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**Pursuant to Fed. R. Civ. P. 12(b)(6).**<br><br>Date: October 31, 2024<br>Time: 10:00 a.m.<br>Courtroom: 4 — 17th Floor<br>Judge: Hon. Vince Chhabria<br><br>Date Filed: June 21, 2024<br>Trial Date: Not Yet Set |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................................................................................................1

II. ARGUMENT ...........................................................................................................3

A. Plaintiff cannot pretend that the Keeps Privacy Policy does not disclose the precise data practices he challenges merely by omitting it from his complaint. ..........3

B. Plaintiff's complaint does not contain any well-pleaded allegations that Twilio intentionally received unauthorized personal health information from Keeps. ...........5

C. Plaintiff's CIPA claims also suffer from several independent statutory defects. .........7

1. Plaintiff concedes that his Section 631 wiretapping claim fails as a matter of law because it does not apply to internet communications. ...............7

2. Plaintiff's Section 631 claims fail under the "party exception" rule because he cannot assume Twilio used his data for its own purposes. ..............7

3. Plaintiff's Section 631 interception claim fails because his allegation that Keeps intercepted his communications "in transit" is conclusory. .............8

4. Plaintiff cannot point to an unidentified computer running Twilio's software to satisfy Section 632's "recording device" requirement. ...................9

D. Plaintiff's constitutional and common law invasion-of-privacy claims fail to state any invasion of privacy, let alone a "highly offensive" intrusion. ..................10

III. CONCLUSION ......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ....................3

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. Jul. 22, 2024)....................2, 5, 6

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................7, 8

*Flores-Figueroa v. United States*,
556 U.S. 646 (2009)....................6

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................1, 3, 4

*Gonzalez-Servin v. Ford Motor Co.*,
662 F. 3d 931 (7th Cir. 2011) ....................4

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................4

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................10

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................5

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................10

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022)....................9

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024)....................1

*Jackson v. Amazon.com, Inc.*,
65 F. 4th 1093 (9th Cir. 2023) ....................3

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)....................8

*Javier v. Assurance IQ*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................8

*Katz-Lacabe v. Oracle America, Inc,*
2023 WL 6466195 (N.D. Cal. Oct. 3, 2023)....5, 6

*Lee v. Ticketmaster L.L.C.*,
2019 WL 9096442 (N.D. Cal. Apr. 1, 2019)....4

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024)....3, 8, 9, 10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)....10

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....8

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....8

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....9

*St. Aubin v. Carbon Health Techs., Inc.*,
4:20-cv-0067-JST (N.D. Cal. Oct. 1, 2024)....9

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023)....9

*Williams v. DDR Media, LLC*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023)....8

*Williams v. What If Holdings, LLC,*
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)....7

**State Cases**

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)....10

*Stark v. Super. Ct.*,
52 Cal. 4th 368 (2011)....6

**Federal Statutes**

18 U.S.C. § 2510....9

**State Statutes**

Cal. Pen. Code § 631.... *passim*

Cal. Pen. Code § 632.... *passim*

## I. INTRODUCTION

Plaintiff alleges that non-party Keeps improperly shared his personal information with its third-party service provider, Twilio. In opposition to Twilio's motion to dismiss, Plaintiff asks this Court to ignore Keeps's Privacy Policy, which plainly discloses and permits Keeps to share this information with service providers like Twilio, and to instead accept his conclusory and counterfactual speculation that Twilio used his personal information for purposes other than those that were disclosed. But Plaintiff cannot simply ignore and imagine away these inconvenient facts, and his complaint is devoid of any well-pleaded allegations supporting his speculation.

Plaintiff's invasion-of-privacy claims under California's Invasion of Privacy Act ("CIPA"), its constitution, and common law are each fatally flawed and should be dismissed with prejudice. ***First,*** Plaintiff's complaint contains no well-pleaded allegation that Twilio secretly intercepted his communications with Keeps without authorization. Dkt. No. 16 ("MTD") at 4–5, 7–8. In its contract with Keeps, Twilio required that Keeps provide all necessary disclosures to its customers and secure their consent before using Twilio's software to collect their personal health information. Dkt. No. 17–1 ("Kanig Decl."), Ex. G ¶¶ 6.2–6.4. Keeps expressly warranted to Twilio that it would do so. Ex. F ¶ 5.2. And, in fact, Keeps disclosed to its users in its Privacy Policy that it "may [] share your Personal Information with entities that assist us with marketing and advertising." *Id.*, Ex. A ¶ 9. The Ninth Circuit has recognized that broad disclosures like this one preclude an invasion of privacy. *E.g., Hammerling v. Google, LLC*, No. 22–17024, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024). In opposition, Plaintiff asserts Twilio has not sufficiently proven that Keeps presented him with its Privacy Policy. Opp. at 2. But Plaintiff gets the burden backwards. Because lack of consent is an element of his claims, it is ***Plaintiff*** who is required to allege ***well-pleaded facts*** showing that he did not consent to Keeps's data practices. *See Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135 (N.D. Cal. 2015). But his complaint contains no allegation that Keeps failed to present its Privacy Policy to him whatsoever—something which is also contradicted by judicially-noticeable and incorporated materials. *See* Twilio's Supp. RJN.

***Second,*** Plaintiff's complaint also contains no well-pleaded facts to support his assertion that Twilio had the requisite ***intent*** to invade his privacy by receiving, contrary to its contract with

Keeps, unauthorized data. MTD at 8–11, 14–15 & n.5 (citing *Doe I v. Google LLC*, — F. Supp. 3d —–, 2024 WL 3490744, at *3–7 (N.D. Cal. Jul. 22, 2024)). Just as in *Doe I*, his complaint is too vague and conclusory to support any reasonable inference that Twilio willfully intended for Keeps to breach their contract, or to breach their contract itself. *See* 2024 WL 3490744, at *1.

Plaintiff points to Twilio's Engage functionality to support his conclusory allegation that his information was intentionally misused without his authorization, but he simply fails to address Twilio's argument that Keeps ***never*** purchased and enabled the Engage functionality and that he cannot merely rely on "generic product descriptions" to plausibly plead otherwise. MTD at 7, 10–11, 15 (citing *Doe I*, 2024 WL 3490744, at *3). In truth, Keeps has never enabled Engage. But even so, Twilio's Engage functionality ***does not*** incorporate its customers' information into consumer profiles that Twilio then offers up to the market or otherwise uses for its own purposes. This would be inconsistent with Twilio's contracts with its customers, including its contract with Keeps, which is why "the documents incorporated by reference into Plaintiff's complaint do not support this assumption; indeed they appear to contradict it." MTD at 3, 6–7 (citing *Doe I*, 2024 WL 3490744, at *2). What those documents show instead is that Twilio's contract with Keeps prohibits it from using Keeps's customer data for a non-Keeps purpose. Kanig Decl., Ex. F ¶ 4.4. Plaintiff fails to allege any ***well-pleaded facts*** that establish Twilio intentionally did otherwise.

***Third*****,** Plaintiff's opposition also confirms that his CIPA claims are separately deficient. He admits that he cannot state a wiretapping claim under the first clause of Section 631(a) because it does not apply to the internet. Opp. at 9–10. Plaintiff pivots to his interception claim under the second clause, *id.*, but he cannot overcome his own allegations that ***Keeps*** collected and then "disclosed" his data to Twilio, MTD at 12. And his eavesdropping claim under Section 632 fails because Twilio's software is not a "recording device," MTD at 13, and he cannot point to some Keeps "computer the software is running on" to avoid this requirement, *see* Opp. at 11–12.

***Finally***, Plaintiff's opposition does nothing to meaningfully rebut Twilio's argument that his constitutional and common law claims fail to meet the "high bar" set for these claims. *See* MTD at 14–15. Twilio is Keeps's contractually authorized service provider, not some unknown interloper, and Keeps's data practices were disclosed to its users in its Privacy Policy. In view of

these disclosures, Twilio's explicit instructions to Keeps to not share unauthorized information, and Keeps's promise that it would not do so, it is impossible to conclude that Twilio invaded his privacy ***at all***, let alone in the "highly offensive" manner required to state these claims. *See Love v. Ladder Fin., Inc.*, No. 23-CV-04234-VC, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024).

## II. ARGUMENT

### A. Plaintiff cannot pretend that the Keeps Privacy Policy does not disclose the precise data practices he challenges merely by omitting it from his complaint.

Each of Plaintiff's privacy claims require him to plausibly plead that Twilio intercepted his communications with Keeps ***without his authorization or consent***. MTD at 7–8. "Where lack of consent is an express element of a claim . . . it must be alleged in the complaint." *Garcia*, 78 F. Supp. 3d at 1136.[1] Plaintiff does not dispute that the Keeps Privacy Policy broadly discloses that Keeps "may [] share your Personal Information with entities that assist us with marketing and advertising" or that the term "Personal Information" is defined to include the information at issue here. *See* MTD at 7–8 (citing Kanig Decl. Ex. A ¶¶ 3, 8).[2] And he concedes his complaint contains no allegation—well-pleaded or otherwise—that he was not shown the Privacy Policy when he accessed the Keeps website and made his purchase. Opp. at 2.

Plaintiff makes several scattershot arguments to attempt to avoid dismissal: (1) the Keeps Privacy Policy is not properly part of the record; (2) even if it is, there is no evidence in the record that Keeps presented him with the Privacy Policy; (3) even if there is, there is no evidence in the record that he "affirmatively consented" to the Privacy Policy, which he claims is required; (4) even if he did, Keeps did not expressly disclose that it used Twilio's software; and (5) in any case, the Privacy Policy does not say that third-party service providers such as Twilio can use customer information for their own purposes. Opp. at 2–5. These arguments all fail.

***First,*** the Keeps Privacy Policy ***is*** properly considered here, despite the fact that the

[1] Plaintiff cites to *Jackson v. Amazon.com, Inc.* to contend that it is Twilio's burden to prove that he authorized or consented to Keeps sharing his personal health information with Twilio, but that case is inapposite as it concerns the burden of proving consent to arbitration, not the burden of proving lack of consent as an element of a privacy claim. 65 F. 4th 1093, 1100 (9th Cir. 2023).

[2] Plaintiff's citation to *Calhoun v. Google, LLC* is inapposite because that case alleged there were extracontractual statements purporting to contradict Google's privacy policy. 113 F.4th 1141, 1149 (9th Cir. 2024). No such extracontractual, contradictory statements are alleged here.

complaint studiously avoids informing this Court about its existence. *See* RJN Reply at X–X.[3]

***Second,*** Plaintiff now takes his omission a step further by falsely suggesting that Keeps never presented him with its Privacy Policy during the account creation process. *See* Opp. at 2–3 (representing that Compl. ¶¶ 44–51 are the "screenshots of purchase process"). But Plaintiff ***omits*** the screen that presents the Keeps Privacy Policy to its customers. *See* Supp. Kanig Decl., Ex. Q. Worried that Twilio might present this screen on reply, Plaintiff repeatedly tells this Court that Twilio is "prohibited" from rebutting his false claim. Opp. at 3. It is not. Supp. RJN at 1–2.

***Third,*** Plaintiff's pleading burden is not satisfied by his conclusory recitation that he did not consent to Twilio's "intercept[ion]." *See* Compl. ¶ 6. Because lack of consent is an element of his claims, it is Plaintiff who is required to allege via ***well-pleaded facts*** that he did not consent to the data practices. *Garcia*, 78 F. Supp. 3d at 1135. Moreover, "the Court need not accept as true any allegations contradicted by 'matters properly subject to judicial notice or by exhibit' or 'that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* at 1136 (quoting *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

Plaintiff's argument that, regardless of whether he saw the Privacy Policy, he did not "affirmatively consent," is also factually and legally incorrect. As a factual matter, Plaintiff was required to click a button directly above a link to the Keeps Privacy Policy before he could create an account with Keeps. Supp. Kanig Decl., Ex. Q ("By continuing, you agree to accept our <u>Terms & Conditions</u> and <u>Privacy Policy</u>"). That consent is all that is required. *See, e.g.*, *Lee v. Ticketmaster L.L.C.*, No. 18-CV-05987-VC, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020). Plaintiff cites no authority requiring more. Opp. at 3–4.[4]

***Fourth,*** Plaintiff says the Keeps Privacy Policy is ineffective because it did not expressly disclose that Twilio was a service provider in its section on data collection, as it did for several other service providers. Opp. at 4 (citing Kanig Decl., Ex. A ¶ 7). But Plaintiff ignores that the

---

[3] Plaintiff's tactic of omitting the Keeps Privacy Policy from his complaint—and then decrying that the Court should not review it because of his omission—is akin to the "ostrich-like tactic" famously depicted in *Gonzalez-Servin v. Ford Motor Co.*, 662 F. 3d 931, 934 (7th Cir. 2011).

[4] Plaintiff suggests that even if he did consent, Keeps had already disclosed his communications to Twilio, contradicting his allegations that Keeps collected his data and then later "disclosed" it to Twilio. *See* Compl. ¶¶ 34–35, 40, 42 (repeatedly alleging that "Keeps.com discloses users' PII and PHI to Twilio through the Segment API"). But no well-pleaded facts support this.

first item on the list is a general category called "Cookies" that broadly discloses that Keeps uses several types of cookies that are provided by "service providers" "to receive and store certain types of information whenever you interact with our Site or Service." Kanig Decl., Ex. A ¶ 7.

***Finally,*** Plaintiff contends that the Keeps Privacy Policy did not disclose that third-party service providers might use customer information for their own benefit. The problem with this argument—as explained in detail below—is that Twilio never used, and in fact was prohibited from using, his information for its own benefit. There are no well-pleaded facts to the contrary.

**B. Plaintiff's complaint does not contain any well-pleaded allegations that Twilio intentionally received unauthorized personal health information from Keeps.**

Plaintiff does not dispute that Keeps was required by its contract with Twilio—a contract incorporated into Plaintiff's complaint as the express basis of all his claims (Compl. ¶ 3)—to provide all necessary disclosures to its customers in order to secure their consent before using Twilio's software to collect their personal health information. Kanig Decl., Ex. G ¶¶ 6.2–6.4. Keeps expressly warranted to Twilio that it would, Ex. F ¶ 5.2, and then did so, *id.*, Ex. A ¶ 9.

Without allegations pleaded with particularity that Twilio and Keeps's express agreement was essentially a fraudulent sham to obscure Twilio's secret intent to receive unauthorized health information, Plaintiff cannot allege that Twilio willfully violated his privacy as his claims require. MTD at 8–10 & n.5 (citing *Doe I*, 2024 WL 3490744, at *3–7). This is not a "question of fact," *see* Opp. at 7, but a heightened pleading burden that he not satisfied, and can never satisfy. Even if some defect existed in Keeps's disclosures, Plaintiff has not alleged that this was anything more than ***Keeps's*** deficiency. *See Doe I*, 2024 WL 3490744, at *6 (CIPA) (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("Even negligent conduct . . . does not 'approach [the] standard' of actionable conduct under the California Constitution.")).[5]

Plaintiff's citation to *Katz-Lacabe v. Oracle America, Inc.* only proves Twilio's point. *See* No. 22-cv-04792-RS, 2023 WL 6466195, at *4–5 (N.D. Cal. Oct. 3, 2023). In that case, the plaintiffs asserted a Section 631 interception claim, and Oracle moved to dismiss on the grounds

[5] Plaintiff's only attempt to distinguish *Doe I* is that "the complaint [there] included information" that "negated the allegations of intent[,]" and he "does not similarly plead himself out of court." Opp. at 8. But by citing Twilio's contract, that is what he has done. To the extent other cases suggest a different outcome is proper, this Court rejects them. *Doe I*, 2024 WL 3490744, at *5.

that the plaintiffs had failed to allege the requisite intent. *Id.* at *1. Fully adopting the intent standard that Twilio advances here, the court explained that the plaintiffs were required to plead that "Oracle had ***'knowledge to a substantial certainty'*** that deployment of [its software] would record ***confidential*** communications." *Id.* at *4–5 (emphases added).[6] The court held that the plaintiffs there had satisfied this intent standard based on detailed allegations that "this data collection occurs despite Oracle's knowledge that many users do not consent to it." *Id.* (citing *Katz-Lacabe*, Dkt. No. 54 ¶¶ 101–13 (alleging that Oracle knew it was intercepting confidential communications without authorization, given its "opaque" disclosures in "seven different privacy policies" that were never "directed to Plaintiffs" such that they could have known about them)). Nothing in Plaintiff's complaint approaches that level of specificity. *See, e.g.*, Compl. ¶ 84.

Still, Plaintiff says his complaint adequately alleges that Twilio willfully intercepted his communications with Keeps without authorization for two reasons: (1) Twilio exploited his health information for its own benefit by creating a consumer profile about him that it then may have used to deliver internet ads from unrelated third parties; and (2) Keeps received a 2023 letter from the Federal Trade Commission and the U.S. Department of Health and Human Services warning that it was "disclosing sensitive information to third parties." Opp. at 7–8.

Both arguments are wrong. ***First,*** Keeps has ***never*** purchased or enabled on its website the Engage functionality, and Plaintiff cannot merely point to "generic product descriptions" on Twilio's website to plead that functionality was enabled here. MTD at 10–11, 15 (citing *Doe I*, 2024 WL 3490744, at *3). In any case, as Twilio's generic product descriptions make clear, the Engage functionality ***does not*** incorporate one client's customer information into comprehensive consumer profiles that Twilio then offers up its other customers. *Id.* at 6–7 (citing Kanig Decl., Exs. J–P). Plaintiff does not try to dispute this. And even if Engage could do what Plaintiff says (and it cannot), Twilio is ***contractually prohibited*** from using its customer information for a non-Keeps purpose. *Id.* (citing Kanig Decl., Ex. F ¶ 4.4). Plaintiff's only response is to speculate that

---

[6] As *Katz-Lacabe* thus makes clear, CIPA's willfulness requirement applies to all of its elements, meaning that the interception of confidential information without authorization must be willful, not just interception. *Id.*; *see also Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009) (a criminal statute's *mens rea* requirement is generally applied to each element); *Stark v. Super. Ct.*, 52 Cal. 4th 368, 393 (2011) ("[C]riminal statutes [] include a guilty knowledge requirement.").

Twilio may have never intended to keep this promise to Keeps. Opp. at 9. But Plaintiff does not actually allege this, let alone plausibly or with particularity, which would be required to accuse Twilio of such promissory fraud. MTD at 8–10 & n.5 (citing *Doe I*, 2024 WL 3490744, at *3–7).

***Second,*** Plaintiff's claim that Keeps received a 2023 FTC/HHS letter warning it that its website may be sharing confidential information with third parties is irrelevant. *See* Opp. at 7–8. This letter, which was sent to over one hundred healthcare and telehealth providers, concerned Google and Facebook's pixel tracking technologies, which are ***not*** Twilio's technology. Compl. ¶¶ 20–24. In any case, by Plaintiff's own admission, this letter predates Keeps's use of Twilio's software, it does not appear that any regulatory action was taken against Keeps as a result of its data-disclosure practices, and Plaintiff does not allege that Twilio knew about this letter. *See id.*

### C. Plaintiff's CIPA claims also suffer from several independent statutory defects.

#### 1. Plaintiff concedes that his Section 631 wiretapping claim fails as a matter of law because it does not apply to internet communications.

Plaintiff agrees that he cannot assert a Section 631 wiretapping claim because it does not apply to the internet. Opp. at 9–10. Accordingly, this claim should be dismissed with prejudice.

#### 2. Plaintiff's Section 631 claims fail under the "party exception" rule because he cannot assume Twilio used his data for its own purposes.

Plaintiff's remaining Section 631 claims—for unauthorized interception and use of his communications—fail under the "party exception" rule, because his complaint contains no well-pleaded allegation that Twilio could have exploited his health information for its own benefit. For that reason, Twilio should not be treated as a third-party interceptor, but an authorized party. MTD at 10–11 (citing *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2–4 (N.D. Cal. Dec. 22, 2022)); *see also Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *18 (N.D. Cal. Apr. 11, 2024).

In response, Plaintiff claims that so long as a third party has the "capability" to use a first party's communication for its own benefit, the rule *per se* does not apply. Opp. at 8–9 (citing *Javier v. Assurance IQ*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023)). Yet, even under *Javier*, there is no well-pleaded allegation that Twilio had the capability to use his health information for

its own benefit because (1) Keeps never had the Engage functionality enabled and (2) Twilio was contractually prohibited from doing so. Section III.B, *supra*. Indeed, because Engage was never enabled, there is also no well-pleaded allegation that "[Twilio] itself ever 'reads, attempts to read, or to learn' the content of the form entries [on the Keeps website]." *See Love*, 2024 WL 2104497, at *1. Plaintiff's Section 631 claims fail accordingly. *Id.* at *1–2; *accord James v. Allstate Ins. Co.*, No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023); *Williams v. DDR Media, LLC*, No. 22-CV-03789-SI, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023).

To the extent that this Court reaches the split in authority on the party exception rule, it should not follow *Javier*, as it has suggested it will not. *Love,* 2024 WL 2104497, at *1. *Javier*'s interpretation of the rule essentially eliminates it, because any party possessing information is always theoretically capable of using it to their own benefit. At minimum, a third party cannot be treated as an unauthorized interceptor when "hired by a party to the communication to do work solely for the party's benefit and with strict limits on the ability of the third party to use the information for any other purpose." *Kaiser*, 2024 WL 1589982, at *14–18. That is the case here.

### 3. Plaintiff's Section 631 interception claim fails because his allegation that Keeps intercepted his communications "in transit" is conclusory.

Plaintiff's interception claim also fails because there is no well-pleaded allegation that Twilio intercepted his communications with Keeps when they were "in transit." MTD at 12.

Plaintiff responds that there is no such requirement because "Section 631's protections extend explicitly to the beginnings and ends of communications." *See Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). It is true Section 631 covers the endpoints of a communication as well as the line it travels on, but that is beside the point here. "[T]he crucial question under § 631(a)'s second clause is whether [a plaintiff] has plausibly alleged that [the defendant] read one of his communications while it was still in transit, **i.e., *before it reached its intended recipient***." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (emphasis added). Thus, even allegations that a defendant "logs the data, and sends a second copy to itself, even when it is not supposed to," are insufficient. *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022).

Plaintiff says that even if there is an "in transit" requirement, he has satisfied it by alleging Twilio "intercepts [] communications in real time and sends the information to its own servers." Opp. at 11. But courts routinely reject this kind of conclusory allegation of interception in transit. *See, e.g.*, *Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022). Indeed, Plaintiff contradictorily alleges that ***Keeps*** installed and used Twilio's software to collect his data and then later "disclosed" it to Twilio. *See* Compl. ¶¶ 34–35, 40, 42; *see also Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (finding that the plaintiffs' allegations "do[] not indicate when the interception occurs ... [and] does not dispel the notion that [the third party] receives the information after the chat reaches [the first party]").[7]

**4. Plaintiff cannot point to an unidentified computer running Twilio's software to satisfy Section 632's "recording device" requirement.**

Plaintiff's opposition also confirms that his Section 632 claim is defective. *See* MTD at 13–14. Twilio's software is not an "electronic recording device" subject to this statute. And his communications with Keeps were not confidential, given that Keeps told him that it would send his information to third parties. Indeed, Twilio did not even "eavesdrop" on his communications because, without Engage enabled, it never reviewed them. *See Love*, 2024 WL 2104497, at *2.

Plaintiff responds that some courts have held that software is a "device" under the federal Wiretap Act. Opp. at 11–12. But the Wiretap Act, which is not the statute at issue here, employs vastly broader language than Section 632: it covers any "electronic, mechanical, or other device," which is defined to mean "any device or apparatus which can be used to intercept a wire, oral, or electronic communication." *Compare* 18 U.S.C. §§ 2510(4), (5) *with* Cal. Pen. Code § 632(a). Thus, the Wiretap Act is intended to cover ***anything*** capable of interception, whereas Section 632 is intended to cover mechanical devices that acoustically amplify or electronically record. *See Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985) (describing "electronic amplifying and recording devices" as "mechanical device[s]"). Plaintiff says this argument ignores the fact that software runs on a "physical, tangible computer," but this only proves Twilio's point. *See* Opp. at 12. The only electronic recording device alleged here was a computer operated by Keeps, not by Twilio.

[7] Plaintiff's citation to *St. Aubin v. Carbon Health Technologies, Inc.*, 4:20-cv-0067-JST (N.D. Cal. Oct. 1, 2024), confirms this claim fails to satisfy the "in transit" requirement. Dkt. No. 27.

**D. Plaintiff's constitutional and common law invasion-of-privacy claims fail to state any invasion of privacy, let alone a "highly offensive" intrusion.**

Plaintiff's constitutional and common law invasion-of-privacy claims fare no better. He contends that what distinguishes Twilio's conduct from other similar cases where dismissal was granted is its "independent use" of his health information for its own benefit. Opp. at 14. But, as discussed above, no such independent use could have occurred because Keeps did not purchase and enable the Engage functionality that underlies this theory. And even if Engage were enabled, Twilio still would not have used Keeps's customer health information for its own purposes (or for those of third parties). Section III.B, *supra*. It is thus impossible to conclude that Plaintiff has plausibly alleged a "highly offensive" invasion of privacy. *See Love*, 2024 WL 2104497, at *2.

Indeed, Plaintiff also asks this Court to ignore the allegation in his complaint showing that the data Keeps collected from him using Twilio's software was anonymized. MTD at 15; *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022) (anonymization reduces the scope of any alleged intrusion); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 831 (N.D. Cal. 2020) (same). Plaintiff's arguments to the contrary are specious. His claim that Twilio must have deanonymized his data because he saw internet ads for a hair loss treatment after he made his purchase from Keeps, Opp. at 15, confuses correlation with causation. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (rejecting implausible allegation of deanonymization). It also ignores the much more obvious explanation that internet advertisers targeted Plaintiff based upon his internet searches, or that Keeps's advertising partners (such as Google, Microsoft, and Meta, each of whose software is also installed on the Keeps website), delivered those ads to him because he accessed the Keeps website. *See* Kanig Decl., Ex. A ¶ 7. Plaintiff's complaint contains no well-pleaded allegation that ***Twilio*** was involved in any internet advertising targeting him, or that ***it*** used his information for any independent marketing purpose.

## III. CONCLUSION

Plaintiff's complaint should be dismissed with prejudice.

///

///

Dated: October 10, 2024

KEKER, VAN NEST & PETERS LLP

By: */s/ Ian Kanig*
BENJAMIN BERKOWITZ
CHRISTINA LEE
IAN KANIG

Attorneys for Defendant
TWILIO INC.